ACCEPTED
15-25-00086-Cv
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
11/14/2025 7:27 PM
CHRISTOPHER A. PRINE
CLERK

**No. 15-25-00086-CV**

---

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
11/14/2025 7:27:48 PM
CHRISTOPHER A. PRINE
Clerk

# In the Court of Appeals
# For the Fifteenth Judicial District
# Austin, Texas

---

City of Grand Prairie, City of Aledo, City of Angleton, City of Aubrey, City of Bulverde, City of Clyde, City of College Station, City of Crandall, City of Denison, City of Denton, City of Edcouch, City of Elsa, City of Fate, City of Hutto, City of Kaufman, City of La Villa, City of Lockhart, City of McKinney, City of Navasota, City of Parker, City of Van Alstyne, and Aubrey Municipal Development District

*Appellants – Plaintiffs*

City of Brownsville, City of Cibolo, City of Anna, and City of Bonham

*Appellants – Intervenor Plaintiffs*

2020 Long Tail Trail Investments, LLC

*Appellant – Intervenor Defendant*

v.

The State of Texas, Attorney General Kenneth Paxton, In His Official Capacity, Acting Texas Comptroller of Public Accounts Kelly Hancock, In His Official Capacity, and the Office of the Texas Comptroller of Public Accounts

*Appellees - Defendants*

---

On Appeal from the 261st Judicial District Court of Travis County, Texas

---

**BRIEF OF APPELLEES**

---

1

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy First Assistant Attorney General

KIMBERLY GDULA
Chief, General Litigation Division

COLE P. WILSON
Texas Bar No. 24122856
Assistant Attorney General

LYNN E. SAARINEN
Texas Bar No. 17498900
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Phone (737) 224-4636
Fax (512) 320-0667
Lynn.Saarinen@oag.texas.gov

*Counsel for State Appellees*

**ORAL ARGUMENT REQUESTED**

**SUPPLEMENTAL IDENTIFICATION OF PARTIES AND COUNSEL**

Appellees supplement the Identity of Parties and Counsel in Appellants' brief to include the City of Burleson as Appellant/Plaintiff and counsel for the City of Burleson.

City of Burleson

Wm. Andrew Messer
Timothy A. Dunn
MESSER FORT, PLLC
6371 Preston Rd, Ste 200
Frisco, Texas 75034
(972) 668-6400

Bradford E. Bullock
MESSER FORT, PLLC
4201 W. Parmer Ln, Ste C-150
Austin, Texas 78727
(512) 930-1317

**Supplement to City Appellants/Plaintiffs**
**Trial and Appellate Counsel for Burleson, Appellant/Plaintiff**

# TABLE OF CONTENTS

SUPPLEMENTAL IDENTIFICATION OF PARTIES AND COUNSEL ............ 3

TABLE OF CONTENTS ............................................................................. 4

INDEX OF AUTHORITIES ........................................................................ 8

RECORD REFERENCES ..........................................................................13

PARTY REFERENCES .............................................................................13

STATEMENT OF THE CASE ...................................................................15

STATEMENT REGARDING ORAL ARGUMENT ...................................17

ISSUES PRESENTED ............................................................................. 18

INTRODUCTION .................................................................................... 19

STATEMENT OF FACTS .........................................................................20

    I.  Municipalities' Authority to Regulate ETJs is
       Derived From the Legislature ........................................................20

    II.  SB 2038 Limits Municipalities' Authority Over Their ETJs ....... 21

    III. Procedural History ...................................................................... 23

SUMMARY OF THE ARGUMENT ......................................................... 27

    I.  Summation of Appellants' Arguments.......................................... 28

ARGUMENT ........................................................................................... 30

    I.  Appellants Failed to Establish Standing ...................................... 30

        A.  Texas and Federal Standing Mirror Each Other ...................... 30

           1.  Texas Courts may look to the Federal Courts for Guidance ................. 30

           2.  Standing focuses on Appellants because it is their burden
               to prove the trial court's subject matter jurisdiction. ............................31

        B.  Appellants Failed to Establish the Lujan Elements ................. 32

           1.  Appellants have not demonstrated an injury in fact ............................ 32

              i.  Appellants' Injuries are Hypothetical, Not Actual or Imminent....... 32

              ii.  Appellants Have No Standing to Raise Due Process or Equal
                  Protection Claims ....................................................................... 34

iii. The Contract Cities have Not Suffered an "Injury In Fact"
– An Invasion of a Legally Protected Interest.................................. 37

iv. AMDD has Not Suffered an Injury in Fact ....................................... 39

2. There is no traceability between the Appellants' claims
and State Appellees.............................................................................40

i. The State is Not a Proper Party ........................................................40

ii. The Attorney General is Not a Proper Party.................................... 41

   a. The Attorney General has not threatened to enforce SB 2038 ..... 41

   b. That the Attorney General "has not disavowed ever
enforcing SB 2038" shows nothing about whether
the Attorney General will imminently do so against Appellants. .. 43

   c. Prosecutorial indecision, coupled with filing lawsuits in other
unrelated matters, does NOT constitute a credible threat of
enforcement in this lawsuit. ........................................................... 43

     1. Prosecutorial indecision is not sufficient to
establish standing............................................................. 43

     2. The Attorney General does not have an established
history of enforcement with SB 2038 ....................................... 46

     3. Susan B. and Franciscan All. are inapplicable.......................... 47

     4. The Court can determine the law ............................................. 48

iii. The Comptroller is Not a Proper Party Because He Has No
Enforcement Authority Under SB 2038 ............................................ 48

   a. The Comptroller has no enforcement authority under
SB 2038 and no authority under the Tax Code
to collect taxes that are not owed .................................................. 48

   b. There is NO credible threat of enforcement by the
Comptroller because there is nothing to enforce. ......................... 52

3. Appellants' Alleged Injuries Will Not Be Redressed by
a Favorable Decision ......................................................................... 53

i. Appellants Did Not Seek Injunctive Relief ...................................... 53

ii. The Contract Cities, Anna, and Bonham Have Remedies
Against the Other Parties to the Contracts ....................................... 54

II. *Elliott a*nd HB 2512 Moot Many of Appellants' Claims ................................ 56

    A. Elliott v. City of Coll. Station, 717 S.W.3d 888 (Tex. 2025) ....................... 56

    B. HB 2512 ................................................................................................. 58

    C. Issues Mooted by Elliott and HB 2512 ...................................................... 58

III. Appellants' Claims Under the UDJA are Barred by Sovereign Immunity..... 61

    A. The UDJA Does NOT Waive Immunity for Claims Seeking
       a Declaration That a Statue is Unconstitutional or Invalid ...................... 62

    B. Appellants' Constitutional Challenges Are Facially Invalid ...................... 63

       1. Appellants' Article I, Section 19 Claims are Facially Invalid ................ 63

       2. Appellants' Claims Under Article III, Sections 1 and 56
          are not facially valid ............................................................................. 63

          i. SB 2038 Is Not A Special, Or Local Law ......................................... 64

          ii. Appellants Fail To Assert A Facially Valid Claim
             That SB 2038 Is An Unconstitutional Delegation
             Of Legislative Authority Under Article III, Section 1 ....................... 66

       3. The Breach of Contract Claims are Facially Invalid ............................. 67

IV. One-Party Standing Rule – Long Tail's Intervention Does Not Manufacture
    Jurisdiction Over State Appellees ................................................................. 69

V. Issues Relating to Intervenor Appellants ........................................................ 70

    Issue 1: Trial Court's Order Was Not Overbroad With Respect To
       The Separate Pleadings Of Anna And Bonham. ...................................... 70

       1. State Appellees' Amended Plea To The Jurisdiction
          Encompassed Intervenor Appellants' Amended Petitions.................... 71

       2. A Plea To The Jurisdiction Is Not For The Purpose Of
          Challenging Claims ............................................................................... 72

       3. Without Subject Matter Jurisdiction, The Trial Court Was
          Correct To Close The Case. .................................................................. 72

    Issue 2: Remand Is Not Warranted .............................................................. 73

       1. The Pending Motions Were Implicitly Denied or Overruled by
          Operation of Law. ................................................................................. 73

2. Intervenor Appellants Are Not *Entitled* to Amend Pleadings and Join Additional Parties Before a Case is Closed .............................. 73

VI. Issues Relating to Long Tail. ........................................................... 74

VII. Conclusion ................................................................................... 75

PRAYER ................................................................................................ 75

CERTIFICATE OF SERVICE .............................................................. 76

CERTIFICATE OF COMPLIANCE .................................................... 76

# INDEX OF AUTHORITIES

**Cases**

*Abbott v. Mexican Am. Legis. Caucus*,
647 S.W.3d 681 (Tex. 2022)..............................................................................30

*Allen v. Wright*,
468 U.S. 737 (1984) ..........................................................................................53

*Amrhein v. Bollinger*,
593 S.W.3d 398 (Tex. App.—Dallas 2019, no pet.)............................................63

*Bostock v. Clayton Cnty.*,
140 S. Ct. 1731, 1737, 207 L. Ed. 2d 218 (2020)..............................................44

*Brooks v. Northglen Ass'n*, 1
41 S.W.3d 158 (Tex. 2004)................................................................................54

*Cascos v. Tarrant Cnty. Democratic Party*,
473 S.W.3d 780 (Tex. 2015) (per curiam) .........................................................31

*Christ v. TxDOT*,
664 S.W.3d 82 (Tex. 2023) ...............................................................................60

*City of Austin v. Paxton*,
943 F.3d 993 (5th Cir. 2019) ...............................................................31, 46, 47

*City of El Paso v. Heinrich*,
284 S.W.3d 366 n.6 (Tex. 2009) .......................................................................61

*City of Fort Worth v. Zimlich*,
29 S.W.3d 62 (Tex. 2000) .................................................................................35

*City of McLendon-Chisholm v. City of Heath*,
2024 WL 4824113 (Tex. App.—Dallas 2024) .........................................33, 38, 39

*Collins v. Yellen*,
141 S. Ct. 1761 (2021) ......................................................................................29

*Combs v. Tex. Ent. Ass'n, Inc.*,
347 S.W.3d 277 (Tex. 2011) .............................................................................48

*Consumer Data Indus. Ass'n v. Texas*,
2023 U.S. App. LEXIS 19007, 2023 WL 4744918 (5th Cir. July 25, 2023).........43

*County of Cameron v. Wilson*,
160 Tex. 25, 326 S.W.2d 162 (1959) .................................................................65

*Daves v. Dallas Cnty., Tex.*,
22 F.4th 522 (5th Cir. 2022)..............................................................................68

*Deacon v. City of Euless*,
405 S.W.2d 59 (Tex. 1966)................................................................................37

*El Paso County v. El Paso Cnty. Emergency Servs. Dist. No. 1.*,
   622 S.W.3d 25 (Tex. App.—El Paso 2020, no pet.) ............................................ 35

*Elliott v. City of Coll. Station*,
   717 S.W.3d 888 (Tex. 2025) .................................................................. passim

*FM Props. Operating Co. v. City of Austin*,
   22 S.W.3d 868 (Tex. 2000) .................................................................... passim

*Franciscan All., Inc. v. Becerra*,
   47 F.4th 368 (5th Cir. 2022) ................................................................... 44, 46

*Heckman v. Williamson County*,
   369 S.W.3d 137 (Tex. 2012) ................................................................... passim

*Honors Acad., Inc. v. TEA*,
   555 S.W.3d 54 (Tex. 2018) ...................................................................... 34, 35

*In re Abbott*,
   601 S.W.3d 802 (Tex. 2020) ..................................................... 30, 31, 32, 42

*La Union Del Pueblo Entero v. Abbott*,
   751 F. Supp. 3d 673 (W.D. Tex. 2024) ............................................................ 43

*La Union Del Pueblo Entero v. Abbott*,
   751 F. Supp. 3d 673 (W.D. Tex., Sept. 28, 2024) .................................................51

*Liberty Mut. Ins. Co. v. Texas Dep't of Ins.*,
   187 S.W.3d 808 (Tex. App.—Austin 2006, rev. denied).................................... 67

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ........................................................................29, 31, 48

*Maple Run v. Monaghan*,
   931 S.W.2d 941 (Tex.1996) ............................................................................. 64

*Massachusetts v. Mellon*,
   262 U.S. 447 (1923)........................................................................................ 52

*Matzen v. McLane*,
   659 S.W.3d 381 (Tex.  2021) ......................................................................... 39

*Nat'l Ass'n for Gun Rights v. Garland*,
   697 F. Supp. 3d 601 (N.D. Tex. 2023), *appeal dismissed*,
   2024 WL 4763871 (5th Cir. 2024) ................................................................ 45

*Nat'l Press Photographers Ass'n v. McCraw*,
   90 F.4th 770 (5th Cir. 2024) .......................................................................... 42

*Neeley v. W. Orange-Cove Consol. Indep. Sch. Dist.*,
   176 S.W.3d 746 (Tex. 2005) .......................................................................... 36

*Nootsie, Ltd. v. Williamson Cty. Appraisal Dist.*,
   925 S.W.2d 659 (Tex. 1996) .......................................................................... 36

*OCA-Greater Houston v. Texas,*
867 F.3d 604 (5th Cir. 2017) ............................................................... 30

*Ostrewich v. Tatum,*
72 F.4th 94 (5th Cir. 2023) .................................................................. 41

*Patel v. Texas Dep't of Licensing & Regul.,*
469 S.W.3d 69 (Tex. 2015) ................................................................... 68

*Paxton v. Simmons,*
640 S.W.3d 588 (Tex. App.—Dallas 2022, no pet.) .............................. 53

*Payne v. Massey,*
196 S.W.2d 493 (Tex. 1946) ................................................................. 19

*Pratt v. Story,*
530 S.W.2d 325 (Tex. App.-Tyler 1975, no writ) ........................... 37, 67

*Proctor v. Andrews,*
972 S.W.2d 729 (Tex. 1998) ................................................................. 36

*Rodriguez v. Gonzales,*
148 Tex. 537, 227 S.W.2d 791 (1950) .................................................. 64

*Rusk State Hosp. v. Black,*
392 S.W.3d 88 (Tex. 2012) ................................................................... 61

*Simon v. E. Ky. Welfare Rights Org.,*
426 U.S. 26 (1976) ........................................................................ 38, 40

*Smith v. Davis,*
426 S.W.2d 827 (Tex.1968) ................................................................. 65

*Spirit Aerosystems, Inc. v. Paxton,*
142 F.4th 278 (5th Cir. 2025) .............................................................. 43

*State v. Hollins,*
620 S.W.3d 400 (Tex. 2020) ................................................................ 41

*Tex. A&M Univ. Sys. v. Koseoglu,*
233 S.W.3d 835 (Tex. 2007) ...................................................... 69, 72, 73

*Tex. Ass'n of Bus. v. Tex. Air Control Bd.,*
852 S.W.2d 440 (Tex. 1993) ................................................................ 30

*Tex. Democratic Party v. Abbott (Tex. Democratic Party I),*
961 F.3d 389, 400 n.21 (5th Cir. 2020) ............................................... 31

*Tex. Workers' Comp. Comm'n v. City of Bridge City,*
900 S.W.2d 411 (Tex. App.—Austin 1995, writ denied) ................. 34, 35

*Texas Ass'n of Bus. v. Texas Air Control Bd.,*
852 S.W.2d 440 (Tex. 1993) ................................................................ 53

*Town of Annetta S. v. Seadrift Dev., L.P.*,
446 S.W.3d 823 (Tex. App.—Fort Worth 2014, pets. denied)............................ 19

*Town of Lakewood Village v. Bizios*,
493 S.W.3d 527 (Tex. 2016) ...........................................................19, 66

*Town of Shady Shores v. Swanson*,
590 S.W.3d 544 (Tex. 2019)................................................................ 61

*W. Orange-Cove Consol. Indep. Sch. Dist. v. Alanis*,
107 S.W.3d 558 (Tex. 2003) ............................................................... 36

*Whole Woman's Health v Jackson*,
595 U.S. 30 (2021).......................................................................... 52

*Williams v. Houston Firemen's Relief & Ret. Fund*,
121 S.W.3d 415 (Tex. App. 2003, no pet.) ................................................ 64

*Wilson v. Andrews*,
10 S.W.3d 663 (Tex. 1999) ................................................................ 68

**Statutes**

Tex. Civ. Prac. & Rem. Code §§ 37.001-.011 ................................................ 14, 22
Tex. Const. Art. I, § 16.....................................................................36, 37
Tex. Const. Art. I, §§ 3.......................................................................... 23
Tex. Const. Art. II, § 1........................................................................... 69
Tex. Const. Art. III, § 1. ......................................................................... 36
Tex. Const. Art. III, § 56. A..................................................................... 63
Tex. Const. Art. III, §§ 1 ........................................................................ 23
Tex. Const. Art. VII, § 1......................................................................... 36
Tex. Const. Art. VIII, § 1-d-1(a) ................................................................ 36
Tex. Loc. Gov't Code § 212.172 ............................................................ 38, 54
Tex. Loc. Gov't Code § 212.172(h) .......................................................38, 54, 67
Tex. Loc. Gov't Code § 377.102 .................................................................. 49
Tex. Loc. Gov't Code § 42.023 ............................................................... 28, 58
Tex. Loc. Gov't Code § 42.023 (4).......................................................... 28, 58
Tex. Loc. Gov't Code § 42.101................................................................... 21
Tex. Loc. Gov't Code § 42.105(c) ............................................................... 21
Tex. Loc. Gov't Code § 42.105(d)............................................................ 22, 29
Tex. Loc. Gov't Code §§ 42.001-.049 ............................................................ 20
Tex. Loc. Gov't Code §§ 42.105(e) ............................................................... 22
Tex. Loc. Gov't Code §§ 42.151-156 ............................................................. 22

Tex. Loc. Gov't Code §§ 42.155(c) ........................................................ 22

Tex. Loc. Gov't Code § 42.102.............................................................. 21

Tex. Loc. Gov't Code § 42.103 ............................................................. 21

Tex. Loc. Gov't Code § 42.104.............................................................. 21

Tex. Loc. Gov't Code §§ 42.101-105 .....................................................20

Tex. Loc. Gov't. Code § 42 .................................................................. 14

Tex. Loc. Govt. Code § 42.023.............................................................. 22

Tex. Loc. Govt. Code §§ 42.151-156.......................................................20

Tex. Tax Code § 323.302(d) .................................................................50

Tex. Tax Code § 323.309 (b) ................................................................50

Tex. Tax Code §§ 151.409 .................................................................... 49

Tex. Tax Code §§ 151.410 .................................................................... 49

Tex. Tax Code §§ 321.502 .................................................................... 49

Tex. Tax Code §§ 322.302 .................................................................... 49

TX HB 2512, 89th Leg., R.S. (2025)......................................................17

## RECORD REFERENCES

The Reporter's Record is cited as "[volume]RR.[page number]." The Clerk's Record is cited as "[volume]CR.[page number]." The Appendix attached hereto is cited as "App.[page number]". BR. is the Cities' appellate brief.

## PARTY REFERENCES

Defendants/Appellees are the State of Texas, Attorney General Ken Paxton, in his official capacity ("Attorney General"), Acting Comptroller Kelly Hancock, in his official capacity, and the Office of the Comptroller of Public Accounts (with Mr. Hancock, the "Comptroller"), (all collectively "State Appellees"). For uniformity, State Appellees will use the nomenclature used by Plaintiffs/Appellants.

Plaintiffs/Appellants are the cities of Grand Prairie, Aledo, Angleton, Aubrey, Bulverde, Burleson, Clyde, College Station, Crandall, Denison, Denton, Edcouch, Elsa, Fate, Hutto, Kaufman, La Villa, Lockhart, McKinney, Navasota, Parker, and Van Alstyne, Cibolo and Brownsville ("Municipalities") and the Aubrey Municipal Development District ("Aubrey MDD" or "AMDD") (collectively "the Cities" or "City Appellants"). CR.6123.

In the trial court, Brownsville and Cibolo were originally Intervenor-Plaintiffs, 1CR.119, 157. They are now represented by the attorneys for City Appellants in this appeal. BR.1, fn.1.

Aledo, Burleson, and Hutto are included in the Cities, above, and are also referred to as the "Contract Cities" when discussing their unique claims. BR.4.

Additional appellants are the Cities of Anna and Bonham, who were referred to as "Intervenor-Plaintiffs" in the trial court and will be referred to as the "Cities of Anna and Bonham" or "Anna" and "Bonham" or "Intervenor Appellants" in this brief. The Cities of Anna and Bonham have each filed appellate briefs.

The Cities and Intervenor Appellants are collectively referred to as "Appellants".

Long Tail Trail Investments LLC ("Long Tail") was an Intervenor-Defendant in the trial court case. Long Tail has filed a separate appellate brief.

**STATEMENT OF THE CASE**

*Nature of the Case:* SB 2038 amended Local Government Code chapter 42 by adding subchapters D and E to provide for the release of ETJ areas by petition or election, subject to certain restrictions and requirements. Ch. 106, 2023 Tex. Gen. Laws 214 (eff. Sept. 1, 2023). The City of Grand Prairie sued the State of Texas under the Uniform Declaratory Judgments Act seeking declarations that SB 2038 is unconstitutional. 1CR.3. Tex. Civ. Prac. & Rem. Code §§37.001-37.011. Other cities joined the lawsuit. The Cities of Anna, Bonham, Brownsville and Cibolo intervened to assert similar claims. 1CR.119, 124, 157, 13CR.2500. Long Tail Trail Investments, LLC intervened as a defendant seeking a declaration that SB 2038 is constitutional and to assert an affirmative declaratory judgment claim against the City of Denton. 2CR.263. The State of Texas was the only defendant in Plaintiff's' Original Petition. Attorney General Ken Paxton, in his official capacity, Acting Comptroller of Public Accounts Kelly Hancock, in his official capacity, and the Office of the Texas Comptroller of Public Accounts were added as defendants in Plaintiffs' Fourth Amended Original Petition for Declaratory Relief. 24CR.6123.

*Course of Proceedings:* State Appellees filed a plea to the jurisdiction and an amended plea to the jurisdiction challenging Appellants' standing and asserting immunity from suit. 2CR.233, 36CR.8624. State Appellees also filed a motion to strike Long Tail's petition in intervention for lack of standing and a pending lawsuit filed by Long Tail against the City of Denton in Denton County. 12CR.2404. The City Appellants filed an original and amended motion for summary judgment asserting that SB 2038 is unconstitutional on multiple grounds. 2CR.277, 31CR.7991. Long Tail filed an original and amended motion for summary judgment asserting that SB 2038 is constitutional. 3CR.372, 32CR.8069.

*Trial Court:*        261st District Court, Travis County; Hon. Daniella DeSeta Lyttle, presiding. Judgment signed by Hon. Maria Cantu Hexsel.

*Trial Court's Disposition:* The trial court rendered an order that (1) granted the City Appellants' motion for leave to file a supplemental petition; (2) granted State Appellees' motion to strike Long Tail's petition in intervention; (3) granted State Appellees' amended plea to the jurisdiction and dismissed all claims against State Appellees without prejudice; (4) denied City Appellants' amended motion for summary judgement as moot because the court lacked jurisdiction; and (5) denied Long Tail's amended motion for summary judgment because the trial court granted the State Appellees' motion to strike Long Tail's intervention. 40CR.9081.

## STATEMENT REGARDING ORAL ARGUMENT

The Court will have to address several jurisdictional defects in the Cities' suit, including standing and sovereign immunity. These issues call for only a straightforward application of existing law that would not benefit from oral argument, and the Court can stop there without analyzing the constitutional challenges to SB 2038. However, if the Court entertains Appellants' constitutional challenges to the facial validity of SB 2038, then State Appellees respectfully request an opportunity to participate.

## ISSUES PRESENTED

1.    Whether Appellants have established standing for each of their claims against each State Appellee.

2.    Whether Appellants' claims under the UDJA are barred by sovereign immunity.

3.    Whether any of Appellants' claims are moot because of HB 2512 and *Elliott v. City of Coll. Station*, 717 S.W.3d 888 (Tex. 2025).

4.    Whether Appellants have pleaded facially valid claims that SB 2038 is unconstitutional.

5.    Whether this Court should reverse the order striking Long Tail's intervention and render judgment in favor of Long Tail considering the Texas's Supreme Court's decision in *Elliott*.

## INTRODUCTION

State Appellees have no enforcement authority under SB 2038 and have not threatened to enforce this law—let alone against any of the Appellants. Appellants thus lack injury and have no standing to sue, and State Appellees' immunity is not waived for Appellants' constitutional challenges. Alas, Appellants do not perceive existing precedent as an obstacle to their wish to express their disagreement with the Texas Legislature about whether property owners should have any freedom to choose what regulatory scheme applies to them.

Appellants thus strain to focus the Court's attention on altogether unrelated statutes and enforcement actions in which the Attorney General has sued other cities to prop up their challenge here. Appellants also wrongly allege the Attorney General has the authority to enforce SB 2038 simply because he has not disavowed enforcement. Similarly, Appellants claim that the Comptroller has authority to enforce SB 2038 because he collects taxes in extraterritorial jurisdictions ("ETJs") and remits them to the appropriate municipalities. Whatever these points get the Cities here, they certainly do not show a credible threat of enforcement of SB 2038 against them by the State Appellees.

The jurisprudential implications of the Cities' argument are also worth acknowledging. If this Court were to accept the Cities' view, such a decision would

have the practical effect of overruling existing precedent that serves to limit the circumstances in which a litigant may sue the Attorney General in his official capacity to those in which a genuine controversy between the litigants exists.

Two additional considerations help provide an easy way to decide this case. First, the Texas Legislature amended SB 2038 effective September 1, 2025, mooting many of Appellants' claims. Second, the Texas's Supreme Court's decision in *Elliott v. City of Coll. Station*, 717 S.W.3d 888 (Tex. 2025) reflects their consideration of some of the issues in this case.

## STATEMENT OF FACTS

### I. Municipalities' Authority to Regulate ETJs is Derived From the Legislature

As political subdivisions of the State, municipalities "possess only such powers and privileges as have been expressly or impliedly conferred upon them." *Town of Lakewood Village v. Bizios*, 493 S.W.3d 527, 530 (Tex. 2016) (quoting *Payne v. Massey,* 196 S.W.2d 493, 495 (Tex. 1946)). That includes municipalities' authority to regulate activities outside their corporate boundaries, i.e., in their ETJs. "A city's authority to regulate land development in its ETJ is wholly derived from a legislative grant of authority." *Town of Annetta S. v. Seadrift Dev., L.P.*, 446 S.W.3d 823, 826 (Tex. App.—Fort Worth 2014, pets. denied). In more recent years, the Legislature

has codified the concept of municipal ETJs in chapter 42 of the Texas Local Government Code. Tex. Loc. Gov't Code §§ 42.001-.049.

## II. SB 2038 Limits Municipalities' Authority Over Their ETJs

Just as the Legislature can grant cities authority to regulate within their ETJs, it can take that authority away. In 2023, the Texas Legislature did just that. The Legislature limited the statutory authority of cities over their ETJs through the passage of SB 2038, which went into effect September 1, 2023. Act of May 8, 2023, 88th Leg., R.S., ch. 106, 2023 Tex. Gen. Laws 213 (codified at Tex. Loc. Govt. Code 42.101-.156) ("SB 2038").

SB 2038 amended chapter 42, Tex. Loc. Gov't Code, by adding subchapters D and E to provide for landowners to release their property from the ETJ by petition or election without the municipality's consent, subject to certain restrictions and requirements. Tex. Loc. Govt. Code §§ 42.101-105; 42.151-156. The Senate Committee's report reflects that the purpose of SB 2038 was to address the power disparity between ETJ property owners and governing municipalities by providing a mechanism for ETJ residents, who have "no vote or voice in the municipalities that regulate them", to request release of an area within the ETJ by petition or election. 2023 Texas Senate Bill No. 2038, Texas Eighty-Eighth Legislature, Land and Resource Management Committee Report, May 1, 2023. 36CR.8625. Under SB

2038, a landowner in a city's ETJ can release their property from the ETJ and return to regulation by the county in which the property is located. Tex. Loc. Govt. Code §§ 42.101-105; 42.151-156.

The Legislature placed restrictions on what land within an ETJ is eligible for removal by petition: it has to be a certain distance from military bases, meet specific parameters if it is in an area voluntarily annexed into an ETJ, the land cannot be in an industrial district, and cannot be in an area subject to a strategic partnership. Tex. Loc. Gov't Code § 42.101.

The petition also must meet certain requirements: it must be filed by a resident or the owner or the owner in majority of value of the land seeking to be released (§ 42.102), comply with election code requirements (§ 42.103), and it must be signed by more than 50 percent of registered voters or a majority in value of landowners of the land sought to be released (§ 42.104).

If the land is eligible and the submitted petition is verified and meets all the requirements, "the municipality shall immediately release the land from municipality's ETJ." Tex. Loc. Gov't Code § 42.105(c). The municipality must take action on a petition by the later of 45 days after receiving the petition or the next meeting of the municipality's governing body that occurs at least 30 days after the

petition is received, otherwise, the area "is released by operation of law." Tex. Loc. Gov't Code § 42.105(d).

SB 2038 provided for similar eligibility criteria, procedures, and restrictions for filing a petition to hold an election to determine whether a proposed subject area must be released from a city's ETJ. Tex. Loc. Gov't Code §§ 42.151-156 ("election petitions"). A municipality can choose to voluntarily release the land in the election petition from its ETJ before the scheduled date of the election. *Id.* at § 42.156. Both petition mechanisms provide an avenue for landowners to subsequently request that their land be included back within the city's ETJ. *Id.* at §§ 42.105(e), 42.155(c).

Up until this time, the Legislature generally prohibited the reduction of a municipality's ETJ without the governing body's written consent. Tex. Loc. Govt. Code § 42.023.

## III. Procedural History

Grand Prairie sued the State of Texas under the Uniform Declaratory Judgments Act ("UDJA"), Tex. Civ. Prac. & Rem. Code §§ 37.001-.011, asserting that SB 2038 is unconstitutional. 1CR.3. Additional cities joined as plaintiffs in subsequently filed amended petitions. 1CR.73. (First Am. Pet., filed January 9, 2024), 2CR.177 (Second Am. Pet., filed April 19, 2024), 12CR.2317 (Third Am. Pet., filed May 21, 2024). The fourth (and last) amended petition added three additional

defendants: the Office of the Texas Comptroller of Public Accounts, Texas Comptroller Glenn Hegar (now Acting Comptroller Kelly Hancock), and Texas Attorney General Ken Paxton. 24CR.6123.

Four cities intervened as plaintiffs raising the same or similar claims. 1CR.119 (City of Brownsville), 1CR.124 (City of Anna), 1CR.157 (City of Cibolo), and 13CR.2500 (City of Bonham). Brownsville and Cibolo are now aligned with and encompassed within the Cities' Brief in this appeal. BR.1.

In their live pleading, the Cities allege that SB 2038 is unconstitutional facially and as-applied, 24CR.6135, because it violates Tex. Const. art. I, §§ 3 (equal protection), 16 (contract clause), and 19 (due course of law), as well as art. III, §§ 1 (impermissible delegation of power) and 56 (impermissible local or special law). 24CR.6179-80. They also contend SB 2038 conflicts with another law, among other claims. 24CR.6180. However, the Cities failed to identify any circumstances that would make SB 2038 unconstitutional as applied to them versus as applied to other Texas cities.

Anna and Bonham's live pleadings (Second Amended Petition in Intervention and First Amended Petition in Intervention, respectively) are identical. Their live pleadings mirror each other, 33CR.8236 and 35CR.8446, and they include the same declarations requested by the Cities with two additional claims. 24CR.6181,

33CR.8256, 35CR.8466. In addition, both live pleadings incorporate Section VI (Factual Background and Legal Landscape of ETJs) of the Cities' Fourth Amended Petition. 33CR.8245, 35CR.8455. This section contains the arguments for SB 2038's unconstitutionality. 24CR.6152.

Prior to intervening in this lawsuit, Long Tail sued the City of Denton in Denton County for denying its petition to release its property. 32CR.8098. The City of Denton then joined this lawsuit. 1CR.1. Long Tail filed a petition in intervention in this lawsuit, asserting its own UDJA claim against the City of Denton. 2CR.263.

After the Cities filed their fourth amended petition, State Appellees filed an amended plea to the jurisdiction arguing the Cities lacked standing to sue State Appellees and invoking State Appellees' sovereign immunity. 36CR.8624.

The Cities filed an amended traditional motion for summary judgment arguing the same reasons SB 2038 is facially unconstitutional as they did in their fourth amended petition. 31CR.7991. The Cities also asserted in its prayer for relief that SB 2038 is unconstitutional as-applied. 31CR.8050. The Cities did not attempt to identify any circumstances that would make SB 2038 unconstitutional as applied to them versus as-applied to other Texas cities. State Appellees filed an amended response to the Cities'amended motion for summary judgment, 36CR.8580, including objections to the summary judgment evidence. 36CR.8618.

Anna and Bonham filed a joint motion for summary judgment, 33CR.8333, and a joint response to State Appellees' amended plea to the jurisdiction. 38CR.8782.

On January 8, 2025, a hearing was held on State Appellees' Amended Plea to the Jurisdiction (PTJ), the Cities' first amended motion for summary judgment, and Long Tail's amended motion for summary judgment. 2RR.1. Counsel for Anna and Bonham appeared at the hearing. Mr. Overcash informed the trial court that Anna and Bonham had their own petitions on file and while they did not have a motion for summary judgment set for hearing that day, they did want an opportunity to respond in argument to the amended plea to the jurisdiction and Long Tail's amended motion for summary judgment. 2RR.6. Ms. Banks, representing Anna only, also appeared and informed the court that there might be a few things she would need to comment on. 2RR.9. Both attorneys presented short arguments on behalf of their clients. 2RR.51-58.

A separate hearing on State Appellees' motion to strike Long Tail's intervention was held on January 16, 2025.

On April 14, 2025, the trial court granted State Appellees' PTJ and dismissed all claims by the Cities and Intervenor Appellants against all State Appellees. 40CR.9081. The trial court also granted State Appellees' motion to strike Long Tail's petition in intervention. 40CR.9081. The trial court granted the Cities'

motion for leave to file a supplemental petition, 40CR.9081, in which they asserted a violation of Texas Constitution article III, section 1 in each instance where they previously asserted a violation of article II, section 1. 37CR.8767. The Cities' amended motion for summary judgment was denied as moot because the trial court lacked jurisdiction and Long Tail's amended motion for summary judgment was denied as moot because the trial court granted the States' motion to strike Long Tail's intervention. 40CR.9082.

Anna filed a motion to modify the judgment or, alternatively, for new trial on May 15, 2025, 41CR.9153, which was overruled by operation of law.

All parties appealed. Anna and Bonham both adopt by reference, in accordance with Tex. R. App. P. 9.7, the following aspects of the Cities' appellate brief: all factual allegations common to all Texas municipalities, the arguments and legal authorities relating to all issues of standing and sovereign immunity, including the "one-party standing" rule, but excluding those matters specific to Aubrey Municipal Development District. Anna's BR.5, Bonham's BR.5.

## SUMMARY OF THE ARGUMENT

This Court should affirm the trial court's order dismissing all claims against State Appellees because Appellants failed to establish the trial court's subject-matter jurisdiction over each of their claims and failed to overcome the limited waiver of

sovereign immunity found in the UDJA to bring their claims against State Appellees. Further, two significant events have occurred since the trial court's order was issued that directly impact this case.

## I. Summation of Appellants' Arguments

Appellants must show both standing and overcome sovereign immunity to bring their claims against State Appellees - the State of Texas, the Office of the Texas Comptroller of Public Accounts, Texas Comptroller Glenn Hegar, and Texas Attorney General Ken Paxton. They have done neither.

Appellants cannot satisfy any of the three elements of standing. The Cities claim they will suffer an injury if they are forced to implement an unconstitutional law in violation of the Texas Constitution. 24CR.6148. The Cities also claim they will suffer an injury because SB 2038 will have unavoidable financial impacts on their subdivisions. 24CR.6133. The Contract Cities claim they will lose the benefit of the bargain under their development agreements, 24CR.6177, and AMDD claims it will suffer losses from a reduced tax base if individuals or businesses remove their properties from its district. 24CR.6148.

None of these alleged injuries result from SB 2038's allegedly unconstitutional application. The purported injuries are instead the result of the acts of independent third-party landowners who have petitioned to remove their properties from the

Cities' ETJ, not of any action of State Appellees. Further, the injuries are hypothetical and speculative.

Anna and Bonham have not pled an "injury in fact", i.e., a concrete, particularized injury that is actual or imminent.

The Cities acknowledge that "[t]o directly challenge the constitutionality of a statute, a plaintiff must allege that the plaintiff (1) intends to engage in conduct that is arguably constitutionally protected but not permitted by the statue and (2) faces a credible threat of prosecution under that law." *State v. Zurawski*, 690 S.W.3d 644, 658 (Tex. 2024). The Cities admit that they have engaged in conduct that SB 2038 *precludes*: they have not voted in favor of requested reductions to their ETJ, or they have denied petitions to release property from their ETJs. 24CR.6149. Anna and Bonham have also denied petitions to release property. 38CR.8811, 35CR.8490.

Appellants' failure to comply with the Legislature's enactment of SB 2038, especially after the *Elliott* case and the amendments in HB 2512, is not "engaging in conduct that is arguably constitutionally protected." *Zurawski*, 690 S.W.3d at 658. HB 2512 amended Tex. Loc. Gov't Code § 42.023 to provide that the ETJ of a municipality may be reduced without the municipality's consent under subchapter D or E (SB 2038). Tex. Loc. Gov't Code § 42.023(4). If the Cities fail to release the property within a certain period, the property is released by operation of law. Tex.

Loc. Gov't Code § 42.105(d). As Justice Devine explained in the *Elliott* case, "[n]o City ordinance or policy statement can override an express legislative command or supersede what has occurred by operation of law." *Elliott,* 777 S.W.3d at 897

The Cities reference both the *Elliott* case and HB 2512 in footnotes 4 and 5 on page 3 of their brief. BR.3. The Cities characterize HB 2512 as "not pertinent to the 2038 petitions sued upon." BR.3. Anna and Bonham also acknowledge HB 2512 in a footnote in their briefs. They claim that HB 2512 does not modify many of the clauses giving rise to the challenges to SB 2038. Anna's BR.5, fn.12, Bonham's BR.5, fn.12. HB 2512 may well be dispositive should this Court reach the facial validity of Appellants' claims.

## ARGUMENT

### I. Appellants Failed to Establish Standing

#### A. Texas and Federal Standing Mirror Each Other

##### 1. Texas Courts may look to the Federal Courts for Guidance

It is well-established that Texas standing jurisprudence mirrors the test for Article III standing. *In re Abbott*, 601 S.W.3d 802, 807 (Tex. 2020) (original proceeding) (per curiam). "Because standing is a constitutional prerequisite to maintaining a suit under both federal and Texas law, we look to the more extensive jurisprudential experience of the federal courts on this subject for any guidance it may yield." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993).

*Heckman v. Williamson County*, 369 S.W.3d 137 (Tex. 2012), reiterates this point: "Given the parallels between that test and our own, we turn for guidance to precedent from the U.S. Supreme Court…" *Id.* at 155.

However, that is not to suggest that Texas courts must blindly follow federal caselaw. The Texas Supreme Court declined to follow the Fifth Circuit's holding in *OCA-Greater Houston v. Tex.*, 867 F.3d 604 (5th Cir. 2017) because it disagreed with the "conclusory nature" of the Fifth Circuit's analysis with respect to the standing of the state of Texas. *Abbott v. Mexican Am. Legis. Caucus*, 647 S.W.3d 681, 698 (Tex. 2022).

Indeed, the Fifth Circuit has acknowledged that its own decisions "are not a model of clarity on what 'constitutes a sufficient connection to enforcement.'" *Tex. Democratic Party v. Abbott (Tex. Democratic Party I)*, 961 F.3d 389, 400 n.21 (5th Cir. 2020) (quoting *City of Austin v. Paxton*, 943 F.3d 993, 999 (5th Cir. 2019)). Given that admission, Texas courts may not always choose to follow federal caselaw.

### 2. Standing focuses on Appellants because it is their burden to prove the trial court's subject matter jurisdiction.

The Cities rightly state that the focus for standing is on the plaintiff. BR.16. A plaintiff's standing to assert a claim "is implicit in the concept of subject-matter jurisdiction, and subject-matter jurisdiction is essential to the authority of a court to decide a case." *In re Abbott*, 601 S.W.3d at 807. If a plaintiff lacks standing to assert

a claim, the court lacks jurisdiction over that claim and must dismiss it. *Heckman,* 369 S.W.3d at 150–51. It is the plaintiff's burden to affirmatively establish the trial court's subject-matter jurisdiction—and standing—over each claim. *Cascos v. Tarrant Cnty. Democratic Party,* 473 S.W.3d 780, 784 (Tex. 2015) (per curiam).

The plaintiff must establish the three elements of standing: (1) an "injury in fact" that is concrete, particularized, and actual or imminent rather than conjectural or hypothetical; (2) that is "fairly traceable" to the defendant's challenged action and (3) that is redressable by a favorable decision. *In re Abbott,* 601 S.W.3d at 808; *Lujan,* 504 U.S. at 560–61.

Appellants must establish standing in their live pleadings—but here, Appellants failed to do so.

### B. Appellants Failed to Establish the Lujan Elements

#### 1. Appellants have not demonstrated an injury in fact

##### i. Appellants' Injuries are Hypothetical, Not Actual or Imminent

The Cities claim they have suffered, among other things, the permanent loss of ETJ jurisdiction and authority, loss of the ability to protect persons in the ETJ involving platting and subdivision regulations, including the ability to plan master thoroughfares and ensure proper drainage. 24CR.6148. However, since the Cities have denied the petitions to release property they have received, none of those

alleged injuries have occurred. The Cities further claim that SB 2038 "imposes mandatory compliance duties on cities and unavoidable financial impacts on their political subdivision." 24CR.6133. Assuming, arguendo, those alleged injuries were properly plead, they are hypothetical, not at all "actual or imminent". *In re Abbott,* 601 S.W.3d at 808. The mandatory compliance duties and the financial impacts which the Cities claim are imposed on them by SB 2038 are not particular to them. Every municipality in Texas that has an ETJ will have those same mandatory compliance duties and financial impacts.

Moreover, none of the Cities have actually suffered any of those injuries. They are hypothetical, not actual or imminent as required, and they are not a concrete or particularized injury to the Cities.

*City of McLendon-Chisholm v. City of Heath*, No. 05-23-00881-CV, 2024 WL 4824113 (Tex. App.—Dallas 2024), relied on by the Cities, is drastically different. In *City of McLendon-Chisholm*, the City of Heath claimed that it would suffer injuries as a result of McLendon-Chisholm greatly reducing its lot sizes in a new development which, in turn, greatly increased the density. Because Heath bordered this new development, the increased density would impact Heath. Heath's expert provided testimony on how the increased density would impact Heath's roads and other

33

infrastructure and the amount that it would cost Heath to deal with the increased density.

The Cities have plead no such economic injuries.

Further, Anna's and Bonham's allegations of harm are vague and not particularized to Anna or Bonham. As an example, they allege that their respective taxpayers will be forced to pay for elections under SB 2038. 33CR.8253, 35CR.8463. This is not a concrete or particularized injury to Bonham or Anna. They also claim that SB 2038 impacts decades of contractual relationships, such as boundary agreements, delayed annexation agreements, and interlocal agreements, involving justiciable interests of Anna and Bonham. 33CR.8248, 35CR.8458. Assuming, arguendo, this alleged injury was properly plead, it is not concrete or particularized to Anna or Bonham.

### ii. *Appellants Have No Standing to Raise Due Process or Equal Protection Claims*

The Cities other alleged injury stems from "being forced" to implement a statute that violates due course of law and equal protection in violation of Tex. Const. art. I, § 19. 24CR6139.

Anna and Bonham claim that "standing to challenge a legislative act is found whenever a subordinate governmental entity is charged with implementing an unconstitutional statute." 33CR.8244, 35CR.8454. They also claim their residents

will be harmed by depriving them of property, privileges or immunities without due course of law. 33CR.8252, 35CR.8462.

Appellants have no standing to raise due process challenges. They rely on cases they allege give cities the right to bring due course claims, but none of the cases they cite hold as much—let alone permit due course of law claims by a city to proceed against the State itself. "[G]overnmental entities cannot use Article I rights to invalidate the laws that govern them." *Honors Acad., Inc. v. TEA*, 555 S.W.3d 54, 68 (Tex. 2018) (citing *Tex. Workers' Comp. Comm'n v. City of Bridge City*, 900 S.W.2d 411, 414 (Tex. App.—Austin 1995, writ denied)). Article I, section 19 protects the due course rights of a Texas "citizen," and the Fourteenth Amendment protects the due-process rights of a "person," so a municipality is not protected by those provisions against state action. *Honors Acad.*, 555 S.W.3d at 67-68; *City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 72 (Tex. 2000); *City of Bridge City*, 900 S.W.2d at 414. "A municipality may not bring a constitutional challenge against its creating state when the constitutional provision that supplies the basis for the complaint was written to protect individual rights" because municipalities have no such rights to assert against the State. *Honors Acad.,* 555 S.W.3d at 67 (cleaned up).

Appellants' equal protection claims are also based on Article I rights that inure to the benefit of Texas citizens, not political subdivisions of their creating State.

Cities cannot assert constitutional challenges that rely upon Article I rights. *Honors Acad.*, 555 S.W.3d at 68; *City of Bridge City*, 900 S.W.2d at 414; *El Paso County v. El Paso Cnty. Emergency Servs. Dist. No. 1.*, 622 S.W.3d 25, 41 (Tex. App.—El Paso 2020, no pet.).

The Texas Supreme Court has recognized that to have standing, a political subdivision's constitutional challenge to a statute must rest on "some express constitutional provision outside Article I," which protects individual rights. *City of Bridge City*, 900 S.W.2d at 414. Appellants, instead, rely on cases holding that a party may bring a constitutional challenge by demonstrating that it is tasked with enforcing a state statute the party believes is unconstitutional. But none of the cases Appellants cite involve due process or equal protection claims or hold that a City or political subdivision can assert due process or equal protection claims against a state statute. *See, e.g.*, *Neeley v. W. Orange-Cove Consol. Indep. Sch. Dist.,* 176 S.W.3d 746, 773-74 (Tex. 2005) (relying on article VII, section 1 and article VIII, section 1-e); *Proctor v. Andrews,* 972 S.W.2d 729, 734 (Tex. 1998) (relying on article III, section 1); *Nootsie, Ltd. v. Williamson Cty. Appraisal Dist.*, 925 S.W.2d 659, 661-662 (Tex. 1996) (relying on article VIII, section 1-d-1(a)); *Heckman,* 369 S.W.3d at 155 (involving an individual, not a city); *W. Orange-Cove Consol. Indep. Sch. Dist. v. Alanis,* 107 S.W.3d 558 (Tex. 2003) (article VIII, section 1-e).

### iii. The Contract Cities have Not Suffered an "Injury In Fact" – An Invasion of a Legally Protected Interest

The Contract Cities claim that SB 2038 has infringed upon their contractual rights in violation of the Contract Clause contained in article I, § 16 of the Texas Constitution. 24CR.6172. They claim that because of SB 2038, they will no longer be able to annex the property of people with whom they entered into a development agreement and who subsequently filed petitions to release their properties from the ETJ, 24CR.6178, and it denies the Contract Cities the benefit of the bargain they negotiated with that private party. 24CR.6173.

The Texas Supreme Court has previously held that municipalities do not acquire vested rights against the State and therefore cannot challenge the constitutionality of a state statute under Article 1, section 16. *Deacon v. City of Euless*, 405 S.W.2d 59, 62 (Tex. 1966) (addressing retroactive legislation under Article 1, section 16).

Appellants have no vested right against the State to retain properties within an ETJ or to be able to annex those properties in the future. The Legislature could choose to abolish ETJs and Appellants' ability to annex property entirely. *Deacon*, 405 S.W.2d at 62. The Legislature chose to curtail municipal regulation in ETJs via SB 2038. Just as there is nothing limiting the Legislature's ability to curb the annexation powers of home rule cities, there is nothing limiting the Legislature's

ability to curb the power of cities over properties in or previously within their ETJs. *Id.* Since Appellants have no vested rights against the State related to ETJs or annexation, they have not suffered an "injury in fact".

Furthermore, laws that are remedial in nature, such as SB 2038, and that do not disturb vested rights are not within the prohibition against the impairment of contracts. *Pratt v. Story*, 530 S.W.2d 325, 328 (Tex. App.-Tyler 1975, no writ).

The Contract Cities argue in their appellate brief that it is not their contractual rights with the State that is at issue, but instead it is their contractual rights with third parties that SB 2038 "nullified". BR.23. However, SB 2038 did not "nullify" any contractual rights. The parties who chose to file petitions to release their property from the ETJ are the ones who breached their contracts with the Contract Cities. "[A] court [can] act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Heckman*, 369 S.W.3d at 155 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)). The contracts at issue all contain clauses that allow the Contract Cities to sue for breach of contract. *See, e.g.* 31CR.7921. Tex. Loc. Gov't Code § 212.172 states that "[a] contract between a municipality and a landowner entered into prior to the effective date of this section, or any amendment to this section, and that complies with this section is validated,

38

enforceable, and may be adjudicated subject to the terms and conditions of this subchapter, as amended. Tex. Loc. Gov't Code § 212.172(h).

### iv. AMDD has Not Suffered an Injury in Fact

The Cities allege that Aubrey MDD will suffer an injury in the form of lost local sales and use tax revenue, relying on *City of McLendon-Chisholm*, 2024 WL 4824113. In *City of McLendon-Chisholm*, the Dallas Court relied on out-of-circuit opinions to permit a bordering city to sue another city based on expert testimony from five witnesses regarding lost property values, and thereby lost taxes, as well as costs related to infrastructure that would be caused by the neighboring city's planned development. The planned development would more than triple the number of single-family homes by decreasing lot sizes from 1.5 acres to 5,000 - 7,000 feet. 2024 WL 4824113 at *4-5. Heath claimed the drastic change in residential density near its border with McLendon-Chisholm would cause it damages. The Dallas court ultimately held that property value reduction leading to a diminishing tax base can confer standing to sue the neighboring city. *Id.* Here, the Cities have not alleged any impact to property values caused by any State Appellee. For this reason alone, the sole case they point to is inapplicable here because it did not hold that a loss of local sales tax can support standing. The Cities did not offer any expert testimony or evidence as to the alleged lost tax revenue in their petition, or how this lost revenue

is directly traceable to a State Appellee. There are no facts in the Cities' live petition demonstrating lost revenue, and the trial court could not consider evidence submitted in a response or later pleading when deciding the State Appellees' PTJ challenging solely the sufficiency of the allegations in the Cities' Fourth Amended Petition. *Matzen v. McLane,* 659 S.W.3d 381, 389 (Tex. 2021). AMDD has not suffered an injury in fact.

2. **There is no traceability between the Appellants' claims and State Appellees**

i. *The State is Not a Proper Party*

The Texas Supreme Court has unequivocally stated that the State of Texas is not the proper defendant when attempting to challenge the constitutionality of a law duly enacted by the Legislature. *Zurawski,* 690 S.W.3d at 659. Instead, "a plaintiff must identify and name the officer or agency with authority to enforce the challenged law." *Id.* at 659. Neither the Attorney General nor the Comptroller have authority to enforce SB 2038. Appellants have failed to establish standing to sue the State of Texas considering the Texas Supreme Court's clear, binding precedent that the State is not a proper defendant for purposes of challenging the constitutionality of a state statute under the UDJA.

## ii. *The Attorney General is Not a Proper Party*

### a. The Attorney General has not threatened to enforce SB 2038

The traceability element requires that Appellants' alleged injuries be "fairly traceable" to State Appellees' conduct because "a court [can] act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Heckman*, 369 S.W.3d at 155 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)). An injury must be traced to a "defendant's challenged action," not a law. *Abbott v. Mexican Am. Legis. Caucus*, 647 S.W.3d at 690. Otherwise, the judgment would amount to an advisory opinion, which courts are unauthorized to give. Allegations that SB 2038 itself, or unidentified "persons" that petition under it, will impair the Cities' rights do not establish a justiciable controversy against State Appellees because these allegations do not show injuries traceable to "the defendant's conduct." *Heckman*, 369 S.W.3d at 155.

There is no dispute that SB 2038 does not specifically grant the Attorney General authority to enforce SB 2038's provisions. 24CR.6136. Appellants acknowledge this. 24CR.6136, 33CR8247, 35CR.8457. The Cities, instead, point to the Attorney General filing *ultra vires* lawsuits on behalf of the State against other cities related to other laws as evidence that the Attorney General would file *ultra vires*

41

lawsuits against them. 24CR.6131. An *ultra vires* suit is a way to reassert the State's control over its municipalities, based on the State's "justiciable interest in its sovereign capacity in the maintenance and operation of its municipal corporation in accordance with law." *State v. Hollins,* 620 S.W.3d 400, 410 (Tex. 2020). Having the authority to file *ultra vires* lawsuits does not equate with being the relevant governmental entity with enforcement authority for purposes of the UDJA.

The Cities also suggest they have standing because SB 2038 does not specifically disclaim that the Attorney General (or other State Appellee) can enforce it. 24CR.6137. Just because SB 2038 does not specifically disclaim that State Appellees cannot enforce it does not confer standing on the Cities to sue them. *Ostrewich v. Tatum*, 72 F.4th 94, 101 (5th Cir. 2023) (reversing a district-court order finding a likelihood of enforcement based on failure to disclaim the intent to do so); cf. *Nat'l Press Photographers Ass'n v. McCraw,* 90 F.4th 770, 786 (5th Cir. 2024) (rejecting a similar argument).

Additionally, enforcement authority is not enough in a pre-enforcement challenge like this one. To establish standing, Appellants must show that each State Appellee has both enforcement authority under the statute *and* enforced or made a credible threat of enforcement. *Zurawski*, 690 S.W.3d at 658-659. Appellants have

not alleged that the Attorney General or the Comptroller has actually enforced or credibly threatened to enforce SB 2038 against any of them.

**b. That the Attorney General "has not disavowed ever enforcing SB 2038" shows nothing about whether the Attorney General will imminently do so against Appellants.**

Although a disclaimer to that effect may show that enforcement by that party is not imminent or likely, *In re Abbott,* 601 S.W.3d at 812, the *lack* of a disclaimer does not show the opposite. *See, e.g., Ostrewich,* 72 F.4th at 101 (reversing a district-court order finding a likelihood of enforcement based on failure to disclaim the intent to do so); cf. *Nat'l Press,* 90 F.4th at 786 (rejecting a similar argument). Because the Attorney General has not disavowed ever enforcing SB 2038 shows nothing about whether the Attorney General will imminently do so against Appellants. To find otherwise would effectually remove the requirement for a threat to be imminent.

**c. Prosecutorial indecision, coupled with filing lawsuits in other unrelated matters, does NOT constitute a credible threat of enforcement in this lawsuit.**

**1. *Prosecutorial indecision is not sufficient to establish standing***

The cases relied on by Appellants are distinguishable. In *Spirit Aerosystems, Inc. v. Paxton*, 142 F.4th 278 (5th Cir. 2025), the Attorney General announced an investigation of Spirit for alleged "manufacturing defects" and "concerning or dangerous incidents" and issued requests to Spirit to examine numerous records.

43

The requests to examine included a notice that failure to comply with the request is a Class B misdemeanor. He then gave Spirit a "grace period" of three weeks to comply. During the "grace period" Spirit filed its lawsuit. Not only had the Attorney General issued the requests for examination, he also made sure to inform them that the failure to comply came with penalties. Here, no letter or request has been sent to any Appellant by any State Appellee.

In *Consumer Data Indus. Ass'n v. Texas,* 2023 U.S. App. LEXIS 19007, 2023 WL 4744918 (5th Cir. July 25, 2023), the statute provided enforcement authority to the Attorney General; in *La Union Del Pueblo Entero v. Abbott,* 751 F. Supp. 3d 673 (W.D. Tex. 2024), the Attorney General had duties for certain aspects of the statute's enforcement scheme and there is a statute prohibiting district attorneys from not enforcing crimes; and in *Susan B. Anthony,* 573 U.S. 149, 166; 134 S. Ct. 2334, 189 L.Ed.2d 246 (2014), there was a history of past enforcement against the petitioners for the same conduct.

*Franciscan All., Inc. v. Becerra,* 47 F.4th 368 (5th Cir. 2022), was a lawsuit which began in 2016 concerning the Health and Human Services' definition of "sex discrimination", coupled with a violation of the Religious Freedom Restoration Act definition. HHS revised the definition in 2020, 2021, and 2022. In between, the U.S. Supreme Court decided *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1737, 207 L. Ed. 2d

218 (2020), involving the definition of sex discrimination and President Biden issued an executive order that his administration would apply *Bostock's* interpretation to other statutes prohibiting sex discrimination. The lawsuit was resurrected several times. When *Franciscan All.* was decided by the Fifth Circuit in 2022, it was the third time the case had been in front of the Fifth Circuit. Th Fifth Circuit agreed with the district court reasoning that the district court injunctions, the HHS's 2020 interpretation and 2021 revised interpretation, combined to threaten the plaintiff in the same way that the 2016 rule interpretation did, which precipitated the 2016 lawsuit. Each time there was a new interpretation, the notices sent by HHS warned that entities like Franciscan Alliance would be in violation of the statute if they refused to disavow reassignment surgeries. That is a markedly different scenario then the case at hand.

*Nat'l Ass'n for Gun Rights v. Garland,* 697 F. Supp. 3d 601 (N.D. Tex. 2023), *appeal dismissed*, 2024 WL 4763871 (5th Cir. 2024), is also considerably different than the current facts. The plaintiffs in *Nat'l Ass'n* owned prohibited firearms which subjected them to civil and criminal prosecution. The evidence showed that the ATF was actively pursuing enforcement activity and search warrants for the same type of firearms. There were at least 3 individuals facing prosecution for possession of the

45

same type of firearms and 67 ATF seizures. Again, those facts are not remotely related to the facts in this case.

In this case, the Cities can only point to the Attorney General filing ultra vires lawsuits on behalf of the State against other cities related to *other laws*. 24CR.6131. Having the authority to file *ultra vires* lawsuits and having done so in other cases under other laws does not equate with a credible threat of enforcement of the law challenged here.

### 2. The Attorney General does not have an established history of enforcement with SB 2038

Appellants' reliance on *Susan B. Anthony* is misplaced. *Susan B. Anthony* involved First Amendment free speech rights with criminal penalties for violating the statute involved. There was a history of past enforcement against the same petitioners for the same conduct. Here, there is no history of the Attorney General suing any of the Cities under SB 2038, much less suing a City a second time under SB 2038 for the "same conduct". In *Susan B. Anthony, any person* with knowledge of the purported violation could file a complaint. The court held that the threat of future enforcement, which could be made by anyone, together with the additional threat of criminal prosecution, create an "Article III injury." *Susan B. Anthony List v. Driehaus,* 573 U.S. at 166.

That is not what is involved here. Appellants equate "any persons" in *Susan B. Anthony* with the limited number of landowners who might have a claim against Appellants for denying their petitions for release. "Any persons" is not the same as a limited number of landowners in a City's ETJ. Furthermore, there are no criminal penalties involved.

### 3. *Susan B. and Franciscan All. are inapplicable*

As shown above, *Susan B*. and *Franciscan All.* are not applicable to the facts in this case. Here, the only "threat" of enforcement the Cities can point to is that, hypothetically, the Attorney General could file, at some point in the future, an *ultra vires* lawsuit against the Cities, because he has filed lawsuits against other cities for violations of other statutes. The Fifth Circuit has considered and rejected that precise argument as insufficient to show a likelihood of enforcement (and, by extension, a ripe injury). *City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019). In that case, the City of Austin sued the Attorney General to challenge a state statute that preempted one of its housing ordinances. *Id.* at 996. The city argued that it had a ripe injury because in "several recent lawsuits" the Attorney General had "intervened in matters related to municipal ordinances." *Id.* at 1000. The court disagreed, explaining that the fact that the Attorney General had "chosen to intervene to defend *different* statutes under *different* circumstances does not show

that he is likely to do the same here." *Id.* at 1002. Although that holding appeared in the court's discussion of immunity, the court explained that the same principle applied to other justiciability issues turning on whether there is a current threat of enforcement. *Id.*

### 4. The Court can determine the law

The Cities caution this court to "not be distracted by *Ex parte Young* cases which may be cited by State Appellees in an effort to confuse jurisdictional standing with the Eleventh Amendment." BR.40. State Appellees are confident that this court knows what the law is and how it should be applied.

The fact remains that Appellants have not shown that the Attorney General has enforced or credibly threatened to enforce SB 2038 against them or any other city.

### iii. The Comptroller is Not a Proper Party Because He Has No Enforcement Authority Under SB 2038

#### a. The Comptroller has no enforcement authority under SB 2038 and no authority under the Tax Code to collect taxes that are not owed

Assuming that Appellants have established some form of injury, they cannot show that any such injury is traceable to the Comptroller. To satisfy the *Lujan* elements of standing, the injury has to be "fairly traceable" to the challenged action

48

of the defendant, and not the result of the independent action of some third party. *Lujan*, 504 U.S. at 560.

Other than the tax statutes, the Comptroller does not have general authority to enforce civil statutes; instead, he relies on specific statutory grants for enforcement authority. *See*, e.g., *Combs v. Tex. Ent. Ass'n, Inc.*, 347 S.W.3d 277, 278 (Tex. 2011) (Comptroller enforces Sexually Oriented Business Fee Act). There is no dispute that SB 2038 does not grant the Comptroller authority to enforce SB 2038. 24CR.6136, 33CR.8247, 35CR.8457. SB 2038 does not grant the Comptroller any authority. The Comptroller is not mentioned in SB 2038; nor is the Comptroller mentioned in chapter 42, Tex. Loc. Gov't Code. The Comptroller plays no role in SB 2038's statutory provisions.

The Cities argue that AMDD's alleged injury, loss of sales tax revenue, is traceable to the Comptroller because the Comptroller "must enforce SB 2038 as the official/agency obligated to distribute to both cities and MDDs the sales and use taxes received by entities within their taxing jurisdiction." 24CR.6132. Chapter 377 of the Tex. Loc. Gov't Code governs AMDD's taxing authority. Tex. Loc. Gov't Code § 377.102 provides that "Chapter 323, Tax Code, governs the imposition, computation, administration, collection, and remittance of a tax authorized under this subchapter…".

The Cities argument is that if a landowner removes his property from the City of Aubrey's ETJ pursuant to SB 2038, the landowner would no longer be required to pay sales taxes to the Comptroller and that would cause harm to AMDD because of the "lost sales and use tax revenue AMDD would receive from the Comptroller."

To the contrary, AMDD has shown by its analysis above that AMDD's loss of sales tax revenue is the result of the independent action of a third party, the landowner who removes his property from the ETJ.

The sales and use tax revenue are collected pursuant to an Aubrey ordinance. Retailers are responsible for reporting and remitting sales tax collected, including any local tax, to the Comptroller. Tex. Tax Code §§ 151.409, .410. The Comptroller is then responsible for disbursing the local portion of the sales tax to the appropriate local taxing jurisdictions indicated by the taxpayer. Tex. Tax Code §§ 321.502, 322.302. It is the retailer that reports and remits any tax owed to the Aubrey MDD— or does not if a landowner has chosen to release its property from an ETJ under SB 2038, since the Aubrey MDD ordinance and MDD's authority to tax automatically conforms with the boundaries of the City of Aubrey and its ETJ. 24CR.6156. It is the taxpayer or landowner electing to release their property from the ETJ that results in any reduction in local sales or use tax revenue, not any action of the Comptroller. The Comptroller does not review ETJ petitions, verify they meet SB 2038's

requirements, grant ETJ petitions, or otherwise act under SB 2038 upon ETJ petitions to effectuate a release of property and a change in an MDD's boundaries.

Although not pled in the trial court, the Cities maintain in their appellate brief that AMDD will never be able to bring a lawsuit for unpaid sales taxes against a landowner who removes his property from the ETJ under Tax Code § 323.309(b) because to do so the Comptroller must first send AMDD a notice of delinquent persons pursuant to Tax Code § 323.302(d) and the Comptroller cannot do that because the landowner does not owe any tax if his property is no longer within AMDD's taxing jurisdiction. BR.43.

The Cities' leap, without factual allegations, that the Comptroller is somehow enforcing SB 2038 by not remitting sales and use taxes to a municipality related to a property that has been removed from that municipality's ETJ by the independent actions of third parties is a leap too far.

Anna and Bonham failed to establish that any alleged injury is traceable to the Comptroller. They claim that the Comptroller has statutory duties to distribute certain tax revenues collected from ETJ properties to municipalities and other taxing authorities and that requires the Comptroller "to enforce any putative changes to ETJ boundaries which might be initiated by SB 2038 procedures." 33CR.8246,

51

35CR.8456.    That is incorrect.  The Comptroller has nothing to do with the boundaries of an ETJ or a municipality or a county.

### b. There is NO credible threat of enforcement by the Comptroller because there is nothing to enforce.

Relying on *La Union Del Pueblo Entero*, 751 F. Supp. 3d 673, Appellants maintain in their appellate brief, albeit not in the trial court, that even if the enforcement statute is separate from the statute causing the underlying harm, that has been held sufficient to satisfy the "credible threat" test for standing if there are mandatory duties which impose penalties.  BR.45. This First Amendment election case is not on point.  In *La Union*, the Texas Secretary of State must review complaints about potential violations of elections laws and, upon finding probable cause to believe that a crime occurred, refer the case and provide all relevant documents to the Attorney General, who may then either refer the case to the county or district attorney for criminal prosecution or request the district attorney to assist the Attorney General in conducting an investigation.  *Id.* at 712-713.

That is not the case here.  If a landowner has removed his property from the ETJ, no taxes are owed.  There is no mandatory referral for enforcement, there are no criminal penalties involved, and there is nothing to enforce because no taxes are owed.  The Comptroller's compliance with Tax Code statutes does not transform him into a governmental entity with enforcement authority under SB 2038.

Appellants have not pled facts demonstrating that the Comptroller intends to enforce SB 2038, either directly or indirectly, if he even could. Not only is there no credible threat of enforcement, but there is also no threat of enforcement at all.

### 3. Appellants' Alleged Injuries Will Not Be Redressed by a Favorable Decision

#### i. *Appellants Did Not Seek Injunctive Relief*

No court "may lawfully enjoin the world at large, or purport to enjoin challenged laws themselves." *Whole Woman's Health v Jackson*, 595 U.S. 30, 43-44 (2021) (citations omitted) (cleaned up). If a plaintiff is entitled to relief on a claim that a statute is unconstitutional, "the court enjoins, in effect, not the execution of the statute, but the acts of the official, the statute notwithstanding." *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923).

The Cities seek declarations solely to enjoin SB 2038 itself, and, specifically, declarations that its provisions are unconstitutional. 24CR.6181. The Cities do not seek any declarations against State Appellees, or request that State Appellees be enjoined from enforcing or taking any other action under SB 2038. This is because State Appellees do not enforce or undertake actions under SB 2038. Under these circumstances, any decision in this case would amount to nothing more than an improper advisory opinion. *Paxton v. Simmons*, 640 S.W.3d 588, 603 (Tex. App.—Dallas 2022, no pet.). An opinion issued in a case brought by a party without standing

is advisory because rather than remedying an actual or imminent harm, the judgment addresses only a hypothetical injury. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993) (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984).

Even if the Cities had requested injunctive relief, an injunction would provide no relief to the Cities. Neither the Attorney General not the Comptroller have authority to enforce SB 2038. The Texas Supreme Court stated in *Heckman* - "[i]f . . . a plaintiff suing in a Texas court requests injunctive relief . . . but the injunction could not possibly remedy his situation, then he lacks standing to bring that claim." *Heckman*, 369 S.W.3d at 155. Such is the case here.

Anna and Bonham seek the same declarations as the Cities plus two additional declarations. 33CR.8256, 35CR.8466. Each of them included a sentence in their live pleadings that they also seek injunctive relief, 33CR.8239, 35CR.8449, however, they did not pray for injunctive relief. In their prayers, they seek declarations "against the Defendants (including the State of Texas)" that SB 2038 is unconstitutional under various theories. 33CR.8256, 35CR.8466.

### ii. The Contract Cities, Anna, and Bonham Have Remedies Against the Other Parties to the Contracts

"[A] trial court's declaration does not prejudice the rights of any person not a party to the proceeding." *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163 (Tex. 2004); Tex. Civ. Prac. & Rem. Code § 37.006(a). The Texas Supreme Court reiterated this

fundamental principle of declaratory judgments in *In re Kappmeyer*, 668 S.W.3d 651, 655 (Tex. 2023) (orig. proceeding). The Court held that "the outcome of [this] suit does not affect the ability" of any individual, business, or entity to bring their own claims against the same defendants in future lawsuits. *Id*.

Although the Contract Cities contend that SB 2038 leaves them with no legal recourse when a party to a development agreement files a petition to remove their property, 24CR.6177, that is incorrect. Their contractual rights have not been nullified.

Tex. Loc. Gov't Code § 212.172 states that "[a] contract between a municipality and a landowner entered into prior to the effective date of this section, or any amendment to this section, and that complies with this section is validated, enforceable, and may be adjudicated subject to the terms and conditions of this subchapter, as amended. Tex. Loc. Gov't Code § 212.172(h). The Contract Cities' claims can be redressed by those entities and individuals who have breached their contracts, as can Anna's and Bonham's. The Attorney General and the Comptroller cannot redress the Contract Cities, Anna, or Bonham for any alleged injuries resulting from a breach of contract.

## II. *Elliott a*nd HB 2512 Moot Many of Appellants' Claims

Since the trial court's ruling on April 14, 2025, the landscape has changed. On May 9, 2025, the Texas Supreme Court issued its opinion in *Elliott v. City of Coll. Station*, 717 S.W.3d 888 (Tex. 2025), a case involving SB 2038 (App.1); and on September 1, 2025, House Bill 2512 ("HB 2512") went into effect. HB 2512 amended SB 2038 in significant ways, mooting some of Appellants' arguments. Act of May 29, 2025, 89th Leg. R.S., ch. 1041, 2025. App.2.

### A. Elliott v. City of Coll. Station, 717 S.W.3d 888 (Tex. 2025)

Prior to SB 2038 going into effect, the plaintiffs in *Elliott*, who lived and owned property in College Station's ETJ, challenged the city's sign ordinance and an ordinance requiring them to obtain a permit to improve or construct a driveway. *Elliott*, 717 S.W.3d at 893. Even though the plaintiffs had not engaged in either activity, the plaintiffs filed a lawsuit against College Station under the UDJA seeking a judicial declaration that the ordinances were invalid and unenforceable. *Id.* The plaintiffs also asserted that because they are nonvoting ETJ residents, local regulation over them is facially unconstitutional under the "republican form of government" limitation in article I, section 2 of the Texas Constitution. *Id.* College Station filed a plea to the jurisdiction asserting the plaintiffs lacked standing because they suffered no injury, there was no imminent threat of enforcement, and the issue of a

"republican form of government" was a nonjusticiable political question for the legislature." *Id.* at 894. The trial court granted the plea and dismissed the case. *Id.* SB 2038 went into effect the day after the court of appeals issued its opinion affirming the dismissal of the case based on the political doctrine question. *Id.* The court of appeals did not discuss the amended statute. *Id.*

The Court also determined that the filing of a petition for removal would moot the plaintiffs' only claim in the lawsuit. However, the plaintiffs wanted to continue with the lawsuit because College Station adopted resolutions purporting to deny release petitions filed by ETJ property owners. In response, the Court declared that: "[a]ny purported denial of a compliant petition is legally ineffective to avoid the statutory fail-safe. To the contrary, such an action triggers release *automatically* because, in the words of the statute, the municipality has 'fail[ed] to take action to release the area.' No City ordinance or policy statement can override an express legislative command or supersede what has occurred by operation of law." *Elliott,* 777 S.W.3d at 897.

Because SB 2038 afforded the plaintiffs prompt and complete relief for their alleged injuries, the Supreme Court remanded the case to the trial court with instructions to abate the proceedings pending the plaintiffs' exercise of their

statutory remedy. *Id.* at 900. The Court also vacated the lower court's judgment and the court of appeals' opinion. *Id.* at 900.

Concluding, Justice Devine noted that "[SB 2038] is presumed constitutional and remains the law." *Id.* at 900.

### B. HB 2512

HB 2512, which took effect September 1, 2025, amends chapter 42 of the Tex. Loc. Gov't Code in dispositive ways that affect this lawsuit. The amendments moot all of the equal protection and due course of law claims. They also moot some of Appellants' other claims.

### C. Issues Mooted by Elliott and HB 2512

Tex. Loc. Gov't Code § 42.023 provides that the ETJ of a municipality may not be reduced without the municipality's consent, with a few exceptions. HB 2512 amends § 42.023 by adding "or as necessary to comply with [SB 2038]." Tex. Loc. Gov't Code § 42.023(4). App.2. This amendment moots Appellants' claim that SB 2038 is unconstitutional because it conflicts with Tex. Loc. Gov't Code § 42.023. 24CR.6140, 33CR.8252, 35CR.8462.

Appellants' due process and equal protection claims center around the misconception that a majority in value owner can petition and release from a city's ETJ the property of a neighbor without providing the minority in value owner notice

and a meaningful opportunity to be heard prior to the removal of property from a city's ETJ. 24CR.6161, 33CR.8253, 35CR.8463. HB 2512, Section 4, added subsection (d) to § 42.152 to provide for notice to the residents and landowners of the area described in the petition for release. The section now reads as follows: "[i]f a municipality receives a petition under this section, the municipality shall provide notice of the petition to the residents and landowners of the area described by the petition. The municipality shall provide the notice not later than the seventh business day after the date the municipality receives the petition." Tex. Loc. Gov't Code § 42.152(d). App.2.

HB 2512, Section 5, also added an opt out provision. The opt out provision provides that "[b]efore an area is released from a municipality's extraterritorial jurisdiction under this subchapter, a landowner in the area to be released must be provided the opportunity to have the landowner's property remain within the municipality's extraterritorial jurisdiction." Tex. Loc. Gov't Code § 42.157. App.2. Sections 4 and 5 of HB 2512 provide residents and landowners notice and an opportunity to be heard and moot Appellants' due process and equal protection challenges. 24CR.6161, 33CR.8253, 35CR.8463.

Appellants' claim that it is "being forced" to implement a statute that violates due course of law and equal protection, 24CR.6139, 33CR.8244, 35CR.8454, is now moot. Tex. Loc. Gov't Code §§ 42.152(d), 42.157.

Appellants' claim that SB 2038 violates article I, section 19 because it fails to provide affected property owners notice and a meaningful opportunity to be heard prior to the removal of property from a city's ETJ, 24CR.6161, 33CR.8253, 35CR.8463, is now moot. Tex. Loc. Gov't Code §§ 42.152(d), 42.157.

The *Elliott* case, along with the amendments in HB 2512, moot Appellants' claim that a city's ETJ cannot be reduced without its consent. 24CR.6140, 33CR.8252, 35CR.8462. Tex. Loc. Gov't Code § 42.023(4), App.1, 2. "Because releasing the area is the only action a city is authorized to take on a valid petition, its consent is not required." *Elliott*, 717 S.W.3d at 895-96. Or, as Justice Sullivan wrote in his concurring in part, dissenting in part opinion, "Release is a matter of paperwork, not permission." *Id.* at 901.

*Elliott* and HB 2512 also moot Appellants' claim that SB 2038 unconstitutionally delegates legislative authority. 24CR.6157, 33CR.8251, 35CR.8461. App.1, 2. Justice Devine analyzed SB 2038 and determined that SB 2038 "confers no regulatory authority and imposes no public duties on private persons residing in the released area. Nor does it allow landowners to create a

regulatory scheme of their choosing or permit them to pick and choose among the municipal ordinances to which they will adhere. Instead, it offers landowners a choice among existing regulatory schemes." *Elliott,* 717 S.W.3d at 896 (quoting *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 880 (Tex. 2000) ("A delegation [of legislative authority] occurs only when an entity is given a public duty and the discretion to set public policy, promulgate rules to achieve that policy, or ascertain conditions upon which the existing laws will apply.")). *Id.* at 896. The landowners can choose whether they want to be regulated by the city or the county.

## III. Appellants' Claims Under the UDJA are Barred by Sovereign Immunity.

Even if Appellants could show standing, the trial court still lacked jurisdiction over their claims because State Appellees are immune from suit.

Sovereign immunity implicates a trial court's subject-matter jurisdiction. *Christ v. TxDOT*, 664 S.W.3d 82, 86 (Tex. 2023). When the State validly asserts its immunity from suit against a pending claim, it deprives the trial court of jurisdiction over that claim, *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex. 2012), unless the plaintiff can affirmatively establish a waiver of or exception to that immunity. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019).

### A. The UDJA Does NOT Waive Immunity for Claims Seeking a Declaration That a Statue is Unconstitutional or Invalid

Appellants relied exclusively on the UDJA for a waiver of the State Appellees' immunity from suit for their claims.  24CR.6127, 33CR.8239, 35CR.8449.  In the trial court, Appellants made the blanket assertion that the UDJA waives immunity for any claim challenging "the constitutionality of [SB 2038]." 24CR.6151, 33CR.8245, 35CR.8455. They re-urge those arguments here as their sole basis for overcoming State Appellees' sovereign immunity. BR.48.

While it is true that the UDJA contains a "limited waiver of immunity for claims challenging the validity of statutes," *Abbott v. Mexican Am. Legis. Caucus*, 647 S.W.3d at 697, n.7, that waiver only "extends to 'the *relevant* governmental entities'" for facially valid claims. *Zurawski*, 690 S.W.3d at 661 (quoting *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 n.6 (Tex. 2009)) (emphasis added); *id.* at 698.  As in the traceability analysis above, there must be an "'enforcement connection' between the challenged provisions and the State itself." *Abbott v. Mexican Am. Legis. Caucus*, 647 S.W.3d at 697-98.

For the same reasons articulated earlier in discussing traceability, State Appellees lack the necessary "enforcement connection" to SB 2038 to be a "relevant governmental entity" whose immunity is waived by the UDJA for a constitutional

challenge to SB 2038. *See supra* pp. 40-53. Accordingly, their UDJA claims do not waive State Appellees' immunity.

## B. Appellants' Constitutional Challenges Are Facially Invalid

A second reason also precludes Appellants' lawsuits: they do not present any facially valid constitutional claim and thus would not come within the UDJA's limited waiver of sovereign immunity even if they had sued the proper officials.

### 1. Appellants' Article I, Section 19 Claims are Facially Invalid

Appellants seek declarations that SB 2038 violates article I, section 19 of the Texas Constitution because it is unconstitutionally vague and fails to provide affected property owners notice and a meaningful opportunity to be heard prior to the removal of property from a city's ETJ. 24CR.6180. For the reasons discussed above, *supra* 34-36, Appellants cannot bring a facially valid due course of law or equal protection challenge.

### 2. Appellants' Claims Under Article III, Sections 1 and 56 are not facially valid

Appellants conclude without explanation that they bring facially valid claims under Article III, Sections 1 and 56, because their claims "mirror the claims addressed by the Texas Supreme Court" in *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868 (Tex. 2000). Br.50. Other than to highlight one distinction—that in *FM Props.* the City of Austin had sued private individuals—Appellants do not

actually discuss how the existence of a claim in that case supports the validity of their Article III claims here. *Id.*

Thus, Appellants have waived these issues under Texas Rule of Appellate Procedure 38.1. *See Amrhein v. Bollinger*, 593 S.W.3d 398, 402 (Tex. App.—Dallas 2019, no pet.) (explaining that the appellant must discuss how the law cited in the referenced authorities applies to the material facts in the record and supports his appellate arguments) (citation omitted).

At any rate, Appellants' challenge under Article III, Sections 1 and 56 required them to *show* how SB 2038 is unconstitutional as to those provisions. They do not.

### i.    *SB 2038 Is Not A Special, Or Local Law*

It is hard to see how Appellants can establish the facial validity of a constitutional challenge under Article III, Section 56 here. The foregoing generally prohibits the passage of local or special laws where a general law can be made applicable. Tex. Const. art. III, § 56. A "special law" is a law limited to a particular class of persons distinguished by some characteristic other than geography, while a local law is one limited to a specific geographic area of the state. *Williams v. Houston Firemen's Relief & Ret. Fund*, 121 S.W.3d 415, 432 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (citing *Maple Run v. Monaghan*, 931 S.W.2d 941, 945 (Tex.1996)).

Appellants here do not suggest that SB 2038 is limited to a specific geographic region or even to cities exceeding a certain population threshold, as in *FM Props.*, 22 S.W.3d at 896. Thus, they have no argument that it is a local law.

Appellants suggest that SB 2038 is an unconstitutional special law because it only permits the qualified voters of the area described in the release petition to vote on whether to release the property from the municipality's ETJ. 24CR.6167, 33CR.8253, 35CR.8463. Tex. Loc. Gov't Code § 42.153(b).

Appellants' argument still fails because "'[t]he primary and ultimate test of whether a law is general or special is whether there is a reasonable basis for the classification made by the law, and whether the law operates equally on all within the class.'" *Maple Run*, 931 S.W.2d at 945 (quoting *Rodriguez v. Gonzales*, 227 S.W.2d 791, 793 (Tex. 1950)). Appellants' do not show how the current statutory framework does not provide a reasonable basis for whatever classifications they dispute.

That leaves Appellants with the strained argument that SB 2038 is a special law because it creates a statutory framework whereby an election permits a majority to impose its will on the minority that opposes a measure. Tex. Loc. Gov't Code § 42.155(a). If Appellants' argument held any water, then many state-wide election laws might be deemed unconstitutional under Article III, Section 56.

Needless to say, it does not: A statute is not local or special if persons or things throughout the State are affected thereby or if it operates upon a subject in which the people at large are interested. *Smith v. Davis*, 426 S.W.2d 827, 832 (Tex. 1968) (citing *County of Cameron v. Wilson*, 326 S.W.2d 162 (Tex. 1959)).

### ii. Appellants Fail To Assert A Facially Valid Claim That SB 2038 Is An Unconstitutional Delegation Of Legislative Authority Under Article III, Section 1

Appellants also say in passing that SB 2038 violates the separation of powers provision in Article III, Section 1 by allowing individual landowners to remove their property from an ETJ when that power should be exercised by the legislature. 24CR.6159, 33CR.8251, 35CR.8461. It is difficult to see how a law establishing a redress procedure for citizens claiming to suffer some particularized harm unconstitutionally delegates the Legislature's authority to make laws.

Return to *FM Properties*, which Appellants cited as authority for their challenge here. There, owners of contiguous tracts of at least 500 acres within certain municipalities were allowed to designate their property as "water quality protection zones." *FM Props.* at 871. In doing so, the statute exempted landowners from a variety of otherwise applicable regulations, including water quality regulations, and allowed landowners to create and implement a water quality plan for a zone. *Id.* at 872.

The Supreme Court found the challenged provision to be an unlawful delegation of legislative power, weighing heavily against the delegation that the provision vested only limited review over landowners' water quality protection plans. *Id*. at 880. By contrast, here, as the Supreme Court explained in *Elliott*, SB 2038 merely offers landowners a choice amongst regulatory schemes. *Elliott*, 717 S.W.3d at 896 (citing *FM Props.*, 22 S.W.3d at 880 (Tex. 2000)). Simply, private landowners that file ETJ removal petitions do not get to make the rules. Rather, when property is released from a municipality's ETJ, regulation of the area is returned to the county.

Nor does SB 2038 assign duties or grant regulatory powers to landowners. The Legislature made the rules governing ETJ release petitions. The Legislature made the policy decision to create an exception that limits a City's ETJ authority, authority each City only possesses *because* of the Legislature's grant of authority. *Town of Lakewood Village*, 493 S.W.3d at 530 (explaining that, as political subdivisions, municipalities "possess only such powers and privileges as have been expressly or impliedly conferred upon them.") (citation omitted).

### 3. The Breach of Contract Claims are Facially Invalid

Under Texas law, a statute does not unconstitutionally impair contractual rights if the action is a "valid exercise of the police power necessary to safeguard the

public safety and welfare." *Barshop v. Medina Cnty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 635 (Tex. 1996).

Texas courts have specifically held laws that are remedial in nature and that do not disturb vested rights are not within the prohibition against the impairment of contracts. *Pratt v. Story*, 530 S.W.2d 325, 328 (Tex. App.-Tyler 1975, no writ). Unless the State is a party to the contract, "'courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure.'" *Liberty Mut. Ins. Co. v. Texas Dep't of Ins.,* 187 S.W.3d 808, 825 (Tex. App.—Austin 2006, rev. denied).

Because municipalities do not acquire any vested rights against the State there is no impairment of *their* contracts. *Deacon*, 405 S.W.2d at 62. The only potential impact of SB 2038 on the development agreements—the inability of the Contract Cities to annex property no longer within its ETJ—only impacts the remedies available to the Contract Cities and does not amount to an unconstitutional impairment of a contract. The Contract City can still sue for breach of the contract and recover damages consistent with what the Contract City can prove. Tex. Loc. Gov't Code § 212.172(h).

Even if SB 2038 were unconstitutional with respect to the Contract Cities that does not make SB 2038 facially invalid because a statute is only facially invalid if it

"always operates unconstitutionally" "in every situation." *Wilson v. Andrews*, 10 S.W.3d 663, 670 (Tex. 1999). Thus, their argument fails.

## IV. One-Party Standing Rule – Long Tail's Intervention Does Not Manufacture Jurisdiction Over State Appellees

The Cities contend that the intervention by Long Tail Trail creates subject-matter jurisdiction over their claims against the State Appellees. Begin with the basic proposition that standing to sue one defendant does not, on its own, confer standing to sue a different defendant. *Daves v. Dallas Cnty., Tex.*, 22 F.4th 522, 542 (5th Cir. 2022). If a plaintiff lacks standing to assert its claims against one of the defendants, the court lacks jurisdiction and must dismiss those claims against that defendant. *Heckman.,* 369 S.W.3d at 150.

It is true that where multiple plaintiffs seek injunctive or declaratory relief against a defendant, courts need not analyze the standing of more than one plaintiff as against *that defendant* because the same relief will issue regardless of the standing of the other plaintiffs. *Patel v. Texas Dep't of Licensing & Regul.*, 469 S.W.3d 69, 77–78 (Tex. 2015) (quoting *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 152 n.64 (Tex. 2012)). But to suggest (as the Cities do) that standing between one party and another (Long Tail Trail and the City of Denton) permits suit against yet other parties (Appellees) for which no plaintiff can establish standing defeats the logic of *Heckman* because the same relief will not otherwise issue. *Heckman*, 369 S.W.3d at 152 n.64.

The Cities' novel standing argument would thus erode the fundamental limit on the Texas Constitution's separation-of-powers provision by permitting relief in the absence of a justiciable controversy. Tex. Const. art. II, § 1.

## V. Issues Relating to Intervenor Appellants

### Issue 1: Trial Court's Order Was Not Overbroad With Respect To The Separate Pleadings Of Anna And Bonham.

Intervenor Appellants are correct when they state that it is their burden to allege facts establishing the trial court's subject matter jurisdiction. Anna's BR.18, Bonham's BR.18. Their respective petitions failed to do so. *Tex. A&M Univ. Sys. v. Koseoglu,* 233 S.W.3d 835, 840 (Tex. 2007) does not hold that "a defendant must provide evidence demonstrating that [plaintiff's pleading] is 'incurably' defective" in order for a plea to the jurisdiction to be granted without allowing the plaintiff an opportunity to replead. To the contrary, *Koseoglu* directs that a pleading should be dismissed when either the pleadings alone or the jurisdictional evidence demonstrates that the plaintiff's suit incurably falls outside any waiver of sovereign immunity. *Id.* Here, Intervenor Appellants' pleadings alone demonstrated that the jurisdictional defects could not be cured.

Importantly, Intervenor Appellants had an opportunity to replead. Prior to the filing of the amended PTJ, there was a hearing on State Appellees' original PTJ. 2CR.256. Anna filed a 190-page response to the PTJ, 11CR.2114, had counsel present

at the hearing, and then filed a 263-page amended response to the PTJ after the hearing. 18CR.4071. Bonham did not submit briefing on the original PTJ until after the hearing. 13CR.2546. In response, State Appellees objected to Anna's amended response and Bonham's late response, pointing out the jurisdictional defects in their pleadings, 20CR.4719, which still have not been cured and cannot be cured.

The trial court correctly dismissed all claims against State Appellees with prejudice.

### 1. State Appellees' Amended Plea To The Jurisdiction Encompassed Intervenor Appellants' Amended Petitions

Intervenor Appellants' live petitions incorporate section VI of the Cities' 4th amended petition. 33CR.8245, 35CR.8455. Section VI consists of 27 pages of the arguments against SB 2038. 24CR.6152-79. Those arguments are the basis of the declarations requested by both the Cities and Intervenor Appellants. 24CR.6181, 33CR.8256, 35CR.8466. The declarations of Intervenor Appellants and the Cities are almost identical, but for the two additional declarations of Intervenor Appellants. Further, Intervenor Appellants filed a joint response to State Appellees' amended PTJ, 38CR.8782, and their attorneys appeared and argued briefly at the hearing on the amended PTJ. 2RR.51.

Given the incorporation of the constitutional arguments and the declarations requested by the Cities and Intervenor Appellants, State Appellees' amended PTJ absolutely encompassed Intervenor Appellants' petitions.

## 2. A Plea To The Jurisdiction Is Not For The Purpose Of Challenging Claims

Intervenor Appellants maintain that claims that were unique to them and not within the Cities' 4th Am. Petition should have been outside the scope of State Appellees' amended PTJ. The purpose of State Appellees' amended PTJ was not to challenge the Cities' or Intervenor Appellants' claims. The amended PTJ was for the purpose of determining if the trial court had subject matter jurisdiction. The trial court determined that it did not have subject matter jurisdiction and dismissed Appellants' claims against State Appellees.

## 3. Without Subject Matter Jurisdiction, The Trial Court Was Correct To Close The Case.

The trial court stated in the Order that the Cities' Amended Motion for Summary Judgment was denied because the court lacked jurisdiction. 40CR.9082. Therefore, the trial court must have determined that Appellants failed to establish standing and/or overcome sovereign immunity under the UDJA and that the jurisdictional defects could not be cured by repleading. The trial court was correct in its determinations.

*Issue 2:  Remand Is Not Warranted*

### 1. The Pending Motions Were Implicitly Denied or Overruled by Operation of Law.

State Appellees agree that the pending motions were implicitly denied or overruled by operation of law.

### 2. Intervenor Appellants Are Not *Entitled* to Amend Pleadings and Join Additional Parties Before a Case is Closed

Prior to the case being closed, Intervenor Appellants sought to join a business which filed a petition to release its property from the ETJ.   32CR.8221. They also sought to join additional departments, agencies, and officials of the State of Texas "that the State of Texas identifies as capable of exercising any power, duty, claim, lawsuit, or executive action to enforce SB 2038." 32CR.8222.   Alternatively, Intervenor Appellants sought an order "directing the State of Texas to join all interested departments, agencies, and official of the State of Texas." 32CR.8223.  It is not the State's burden to show there is a different relevant government entity and point Intervenor Appellants in the right direction. It is the Intervenor Appellants' burden to sue the right defendant.

Intervenor Appellants again cite to *Koseoglu* for the proposition that "[plaintiffs] are entitled to amend after a court rules on a plea to the jurisdiction." 233 S.W.3d at 839, 840.  That is incorrect. *Koseoglu* directs that a pleading should be

dismissed when either the pleadings alone or the jurisdictional evidence demonstrates that the plaintiff's suit incurably falls outside any waiver of sovereign immunity. *Koseoglu*, 233 S.W.3 at 840. Further, as previously mentioned, Intervenor Appellants had an opportunity to amend their pleadings after the hearing on State Appellees' original PTJ.

Anna also filed a Motion to Modify, Correct, or Reform Judgment or Alternative Motion for New Trial. 41CR.9153. Anna claimed there was newly discovered evidence that TCEQ had taken "action to enforce SB 2038by implicitly recognizing removal of property…" 41CR.9155. That is not an accurate statement. GRBK Edgewood, LLC, submitted a petition for release of its property through its attorney, Winstead, which the City of Anna denied.

The Motion to Modify was overruled by operation of law.

## VI. Issues Relating to Long Tail.

State Appellees stand by the arguments they made in their motion to strike Long Tail's intervention. However, State Appellees also agree with Long Tail that the Texas Supreme Court's ruling in *Elliott,* i.e, that SB 2038 does not require a city's consent to release property from that city's ETJ, and "that SB 2038 is not an unconstitutional delegation of legislative authority", *Elliott*, 717 S.W.3d at 896,

warrants this Court reversing the trial court's order striking Long Tail's intervention and rendering judgment for Long Tail on its claim against the City of Denton.

## VII. Conclusion

This Court should affirm the decision below.

**PRAYER**

The Court should affirm the trial court's order.

Dated: November 14, 2025

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy First Assistant Attorney General

KIMBERLY GDULA
Chief, General Litigation Division

COLE P. WILSON
Texas Bar No. 24122856
Assistant Attorney General

LYNN E. SAARINEN
Texas Bar No. 17498900
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Phone (737) 224-4636
Fax (512) 320-0667
Lynn.Saarinen@oag.texas.gov

*Counsel for State Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2025, I caused the foregoing brief to be electronically filed with the Clerk of the Court using the eFileTexas.gov electronic filing system, which will send notification of such filing to the email addresses denoted on Service Contacts List.

*/s/ Lynn E. Saarinen*

## CERTIFICATE OF COMPLIANCE

Microsoft Word reports that this brief contains 12,693, excluding the portions of the brief exempted by Rule 9.4(i)(l).

*/s/ Lynn E. Saarinen*

# Appendix

Elliot v. City of Coll. Station ........................................................ 1

HB 2512 ................................................................................ 2

# Appendix 1


# *Elliott v. City of Coll. Station*

Supreme Court of Texas

January 15, 2025, Argued; May 9, 2025, Opinion Delivered

No. 23-0767

### Reporter

717 S.W.3d 888 *; 2025 Tex. LEXIS 380 **; 68 Tex. Sup. J. 830; 2025 LX 69492

Shana Elliott and Lawrence Kalke, Petitioners, v. City of College Station, Texas; Karl Mooney, in his Official Capacity as Mayor of the City of College Station; and Bryan Woods, in his Official Capacity as the City Manager of the City of College Station, Respondents

**Prior History:** [**1] On Petition for Review from the Court of Appeals for the Sixth District of Texas.

*Elliott v. City of Coll. Station, 674 S.W.3d 653, 2023 Tex. App. LEXIS 6889, 2023 WL 5617344 (Tex. App. Texarkana, Aug. 31, 2023)*

# Case Summary

### Overview
### Key Legal Holdings

- The courts below erred in holding that the plaintiffs' republican-form-of-government claim is nonjusticiable under the political question doctrine.

- The legislature's amendments to the Extraterritorial Jurisdiction (ETJ) statute in 2023 provided a means for property owners to unilaterally secure the release of property from a municipality's ETJ, largely alleviating the plaintiffs' republican-form-of-government concerns.

- The doctrine of constitutional avoidance requires the court to abate the proceedings and allow the plaintiffs a reasonable opportunity to pursue the statutory release process, instead of unnecessarily ruling on the constitutional issues.

### Material Facts

- Shana Elliott and Lawrence Kalke own property in the City of College Station's Extraterritorial Jurisdiction (ETJ).

- As ETJ residents, their property is subject to certain City ordinances regulating signage and driveway construction, even though they cannot vote in City elections.

- The plaintiffs challenged these ordinances as violating the "republican form of government" clause in the Texas Constitution.

- In 2023, while the case was pending, the Texas Legislature amended the ETJ statute to allow ETJ property owners to petition for release of their property from the City's ETJ.

**Controlling Law**

- *Texas Constitution Article I, Section 2*(republican form of government clause).
- Texas Local Government Code Chapter 42 (regulating municipalities' Extraterritorial Jurisdictions).

**Court Rationale**

The court did not decide whether the plaintiffs' claim is nonjusticiable under the political question doctrine, vacating the lower court's opinion on that issue. The 2023 amendments to the ETJ statute provide a self-help solution for the plaintiffs' grievances by allowing them to unilaterally remove their property from the City's ETJ. This largely alleviates their republican-form-of-government concerns and obviates the need for a constitutional ruling at this time. Under the constitutional avoidance doctrine, the court should refrain from unnecessarily ruling on constitutional issues when a legislative enactment provides a means of extrajudicial resolution. This upholds separation of powers and prevents constitutional friction.

**Outcome**
**Procedural Outcome**

The Supreme Court vacated the lower court judgments and the court of appeals' opinion. The case is remanded to the trial court with instructions to abate the proceedings and allow the plaintiffs a reasonable time to pursue the statutory ETJ release process. If the plaintiffs fail to avail themselves of the release process, the suit may be subject to dismissal.

# LexisNexis® Headnotes

Governments > Local Governments > Ordinances & Regulations

*HN1* **Local Governments, Ordinances & Regulations**

Municipal authority to act extraterritorially reflects the legislature's policy determination that limited local regulation in statutorily defined buffer zones promotes the general health, safety, and welfare of the citizenry. *Tex. Local Gov't Code §§ 42.001*,.021.

Governments > Local Governments > Boundaries

Governments > Local Governments > Property

Governments > Local Governments > Duties & Powers

*HN2* **Local Governments, Boundaries**

Extraterritorial jurisdiction is a legislative creation that allows a municipality to exert specified regulatory authority over unincorporated areas contiguous to municipal boundaries. *Tex. Local Gov't Code § 42.021* defines municipal ETJ and sets general boundaries.

Business & Corporate Compliance > Real Property > Zoning > Building & Housing Codes

Real Property Law > Zoning > Building & Housing Codes

Real Property Law > Subdivisions > State Regulations

Governments > Local Governments > Duties & Powers

Governments > Local Governments > Property

Governments > Police Powers

*HN3* **Zoning, Building & Housing Codes**

As codified in Chapter 42 of the Texas Local Government Code, the geographic limit of a particular municipality's ETJ is determined by its population size, among other things. *Tex. Local Gov't Code §§ 42.021-42.026*. Within this area, the legislature has authorized municipalities to exercise the state's police powers on specific matters, including plats and subdivision of land, signage, public roads, and groundwater extraction. *Tex. Local Gov't Code §§ 212.002-212.003*, *216.003*, 216.901-216.902;Other types of extraterritorial regulation is specifically forbidden. For example, a municipality may not regulate the use, height, or size of any building in its extraterritorial jurisdiction, require a building permit, or enforce its building code. *Tex. Local Gov't Code §§ 212.003(a)*, *212.049*.

Governments > Local Governments > Charters

Governments > Local Governments > Ordinances & Regulations

Governments > Local Governments > Home Rule

Governments > Local Governments > Duties & Powers

*HN4* **Local Governments, Charters**

A home-rule municipality has the full power of local self government, *Tex. Local Gov't Code § 51.072*, so long as the charter provisions or ordinances are not inconsistent with state or federal law, *Tex. Const. art. XI, § 5*.

Civil Procedure > ... > Declaratory Judgments > State Declaratory Judgments > Grounds for Relief

Governments > Local Governments > Ordinances & Regulations

*HN5* **State Declaratory Judgments, Grounds for Relief**

*Tex. Civ. Prac. & Rem. Code § 37.004(a)* authorizes a person whose rights, status, or other legal relations are affected by a municipal ordinance to seek a declaration regarding its construction or validity.

Civil Procedure > ... > Justiciability > Political Questions > Separation of Powers

Constitutional Law > The Judiciary > Case or Controversy > Political Questions

*HN6* **Political Questions, Separation of Powers**

The political question doctrine is primarily a function of the separation of powers and excludes from judicial review controversies that revolve around policy choices and value determinations constitutionally committed for resolution to nonjudicial government branches.

Civil Procedure > ... > Voluntary Dismissals > Court Order > Dismissal With Prejudice

### *HN7* Court Order, Dismissal With Prejudice

In general, dismissal with prejudice is improper when the plaintiff is capable of remedying the jurisdictional defect.

Governments > Local Governments > Boundaries

Governments > Local Governments > Duties & Powers

### *HN8* Local Governments, Boundaries

The legislature has declared the policy of the state to designate certain areas as the extraterritorial jurisdiction of municipalities to promote and protect the general health, safety, and welfare of persons residing in and adjacent to the municipalities. *Tex. Local Gov't Code § 42.001*. In addition to creating, defining, and setting the terms by which nonresidents may be subjected to municipal regulation, the legislature controls the circumstances under which a municipality's statutorily prescribed ETJ can be reduced or otherwise altered.

Governments > Local Governments > Boundaries

Governments > Local Governments > Property

### *HN9* Local Governments, Boundaries

Release by petition allows the owner of even a single parcel of land to unilaterally and automatically secure the property's release from a city's extraterritorial jurisdiction (ETJ). Once the city secretary has verified the property owner's signature on an otherwise valid petition, the city is required to immediately release the area from its ETJ. *Tex. Local Gov't Code § 42.105(a)-(c)*. Because releasing the area is the only action a city is authorized to take on a valid petition, its consent is not required.

Governments > Local Governments > Employees & Officials

Governments > Local Governments > Ordinances & Regulations

Governments > Local Governments > Property

### *HN10* Local Governments, Employees & Officials

Because *Tex. Local Gov't Code § 42.105* prescribes a mandatory action and a mandatory consequence for noncompliance, no discretion is afforded to the municipality on these matters. When property is released from a municipality's extraterritorial jurisdiction—by the city or by operation of law—regulation of the area is necessarily returned to the county. The amended statute confers no regulatory authority and imposes no public duties on private persons residing in the released area. Nor does it allow landowners to create a regulatory scheme of their choosing

or permit them to pick and choose among the municipal ordinances to which they will adhere. Instead, it offers landowners a choice among existing regulatory schemes.

Governments > Local Governments > Duties & Powers

Governments > State & Territorial Governments > Elections

### *HN11* **Local Governments, Duties & Powers**

*Tex. Local Gov't Code § 42.104(a)* requires the petition for release of an area from a city's extraterritorial jurisdiction to be signed by more than 50 percent of the registered voters of the area described by the petition as of the date of the preceding uniform election date or a majority in value of the holders of title of land in the area described by the petition. *Tex. Local Gov't Code § 42.103* makes Chapter 277 of the Election Code applicable to a petition requesting removal. *Tex. Elec. Code §§ 277.001-277.004* governs the requisites for a petition prescribed by law outside of the Election Code).

Governments > Legislation > Interpretation

### *HN12* **Legislation, Interpretation**

A statute requiring that an act be performed within a certain time, using words like shall or must, is mandatory. The word "must" is given a mandatory meaning when followed by a noncompliance penalty.

Governments > Local Governments > Employees & Officials

### *HN13* **Local Governments, Employees & Officials**

A delegation of legislative authority occurs only when an entity is given a public duty and the discretion to set public policy, promulgate rules to achieve that policy, or ascertain conditions upon which the existing laws will apply.

Governments > Local Governments > Boundaries

Governments > Local Governments > Duties & Powers

### *HN14* **Local Governments, Boundaries**

Not all areas in an extraterritorial jurisdiction are eligible for release under the amended statute. For example, the release process is not available for an area within five miles of a military base at which an active training program is conducted or for property that is subject to a strategic partnership agreement as defined in Chapter 43 of the Local Government Code. *Tex. Local Gov't Code §§ 42.101(1)*, *(5)*, *42.151(1)*, (5).

Governments > Local Governments > Boundaries

Governments > Local Governments > Property

### *HN15* **Local Governments, Boundaries**

Once released, the area may not be included in the extraterritorial jurisdiction (ETJ) or the corporate boundaries of a municipality, unless the owner or owners of the area subsequently request that the area be included in the municipality's ETJ or corporate boundaries. *Tex. Local Gov't Code § 42.105(e)*.

      Governments > Local Governments > Employees & Officials

      Governments > Local Governments > Ordinances & Regulations

### *HN16* Local Governments, Employees & Officials

The Local Government Code imposes a mandatory duty on City officials to immediately release an area described in a release petition, and if that does not happen within a specified timeframe, release is effectuated as a matter of law. Any purported denial of a compliant petition is legally ineffective to avoid the statutory fail-safe. To the contrary, such an action triggers release automatically because, in the words of the statute, the municipality has failed to take action to release the area. *Tex. Local Gov't Code § 42.105(d)*. No City ordinance or policy statement can override an express legislative command or supersede what has occurred by operation of law.

      Civil Procedure > ... > Justiciability > Mootness > Real Controversy Requirement

### *HN17* Mootness, Real Controversy Requirement

Even when mootness emanating from a nonjudicial process is merely a possibility, the supreme court has consistently required abatement of the judicial proceedings while the litigants pursue relief extrajudicially.

      Governments > Local Governments > Claims By & Against

      Governments > Local Governments > Home Rule

      Governments > Local Governments > Duties & Powers

      Governments > Local Governments > Ordinances & Regulations

      Governments > State & Territorial Governments > Relations With Governments

### *HN18* Local Governments, Claims By & Against

The legislature can expressly or impliedly limit or withdraw the local self-government power of a home-rule municipality, so long as the legislature's intent to impose the limitation appears with unmistakable clarity.

      Governments > State & Territorial Governments > Legislatures

### *HN19* State & Territorial Governments, Legislatures

Texans have long permitted the legislature to determine, subject to constitutional limits, when an individual's private-property rights must yield to the public interest in health, safety, and welfare. But in the republican form of government, the legislature retains the power to bring local government to heel and in all things remains accountable to the people for its judgment.

Constitutional Law > ... > Case or Controversy > Constitutional Questions > Abstention

Constitutional Law > ... > Case or Controversy > Constitutional Questions > Necessity of Determination

Constitutional Law > Separation of Powers

### *HN20* Constitutional Questions, Abstention

The role of the judiciary is not to second-guess the policy choices that inform our statutes. Under the doctrine of constitutional avoidance, the courts' duty to ensure compliance with the Texas Constitution comes with a corresponding duty to avoid unnecessary constitutional issues. This doctrine manifests the judiciary's commitment to the separation of powers, respect for the other branches, and desire to prevent constitutional friction unless and until unavoidable. By refraining from exercising jurisdiction when a dispute can be resolved extrajudicially under a legislative enactment, we uphold the separation of powers that stabilizes our government.

Constitutional Law > Bill of Rights > Fundamental Rights > Eminent Domain & Takings

Real Property Law > ... > Elements > Involuntary Acquisition & Diminution of Value > Takings

### *HN21* Fundamental Rights, Eminent Domain & Takings

The government must exercise its police power to satisfy its responsibilities, and this commonly requires the imposition of restrictions on the use of private property. Some of these intrusions are compensable; most are not. While all property is held subject to the valid exercise of the police power, some regulations may give rise to a compensable taking.

Governments > Local Governments > Property

### *HN22* Local Governments, Property

Extraterritorial jurisdiction statutes afford municipalities too much control over areas outside of municipal corporate boundaries, and allowing such regulation over residents and property owners who have no vote or voice in the municipalities that regulate them may not necessarily be in their best interests.

Constitutional Law > ... > Case or Controversy > Constitutional Questions > Abstention

### *HN23* Constitutional Questions, Abstention

the constitutional avoidance doctrine's prudential foundation is rooted in the presumption that the rest of the government, no less than the judiciary, intends to comply with the Constitution. The function of constitutional avoidance includes avoiding difficult constitutional questions about the extent of state authority to limit the subsequent exercise of legislative power.

Constitutional Law > ... > Case or Controversy > Constitutional Questions > Abstention

Governments > Courts > Judicial Comity

### *HN24* Constitutional Questions, Abstention

The doctrine of constitutional avoidance directs an order of operations, not as a jurisdictional matter but as a discretionary policy matter akin to comity.

Constitutional Law > ... > Case or Controversy > Constitutionality of Legislation > Inferences & Presumptions

Evidence > Burdens of Proof > Allocation

## *HN25* Constitutionality of Legislation, Inferences & Presumptions

Statutes are presumed to be constitutional and the party challenging the constitutionality of a statute bears the burden of demonstrating that the enactment fails to meet constitutional requirements.

Civil Procedure > Judicial Officers > Judges > Discretionary Powers

Civil Procedure > Preliminary Considerations > Justiciability > Mootness

Civil Procedure > ... > Relief From Judgments > Grounds for Relief from Final Judgment, Order or Proceeding > Vacation of Judgments

## *HN26* Judges, Discretionary Powers

Opinions in cases involving matters that have become moot may be vacated when the supreme court has concluded, as a matter of its equitable discretion, that the public interest would be served by vacatur.

Civil Procedure > ... > Relief From Judgments > Grounds for Relief from Final Judgment, Order or Proceeding > Vacation of Judgments

Governments > Courts > Judicial Precedent

## *HN27* Grounds for Relief from Final Judgment, Order or Proceeding, Vacation of Judgments

Vacatur removes the opinion's binding precedential nature but does not strike it from case reporters or foreclose litigants and courts in future cases from relying on it as persuasive authority.

Civil Procedure > ... > Justiciability > Standing > Injury in Fact

## *HN28* Standing, Injury in Fact

A claim is justiciable only if the plaintiff (1) suffers an injury in fact, (2) that is fairly traceable to the defendant's conduct, and (3) redressable by a ruling from the judiciary.

**Counsel:** For Kalke, Lawrence, Petitioner: Mr. Robert E. Henneke, Christian Townsend, Mr. Chance D. Weldon.

For The State of Texas, Amicus Curiae: Mr. Aaron Nielson.

For Bexar County Emergency Services District Association andthe Bexar County Emergency Services District Number 5, Amicus Curiae: Mr. Arturo Martinez De Vara, Mr. Robert W. Wilson, Mr. Charles H. Sierra, Mr. Adrian A. Spears II.

For Timberwood Park, Amicus Curiae: Mr. Charles H. Sierra, Mr. Arturo Martinez De Vara.

For Texas Municipal League, Amicus Curiae: Mr. Ramon G. Viada III.

For Office Of The Attorney General, Other interested party: Mr. Aaron Nielson, Mr. Rance L. Craft.

For Karl Mooney, Mayor of the City of College Station, Respondent: Ms. Allison S. Killian, Adam C. Falco, Mr. John J. Hightower.

For City of College Station, Texas, Respondent: Adam C. Falco, Mr. John J. Hightower, Ms. Allison S. Killian.

For Bryan Woods, City Manager of the City of College Station, Respondent: Mr. John J. Hightower, Ms. Allison S. Killian, Adam C. Falco.

For Goldwater Institute, Amicus Curiae: Ms. Katrina Eash, Ms. Courtney Rimann.

For Elliott, Shana, Petitioner: Mr. Chance **[\*\*2]** D. Weldon, Christian Townsend, Mr. Robert E. Henneke.

**Judges:** John P. Devine, Justice. JUSTICE DEVINE delivered the opinion of the Court, in which Chief Justice Blacklock, Justice Lehrmann, Justice Boyd, Justice Busby, Justice Bland, Justice Huddle, and Justice Young joined. JUSTICE SULLIVAN filed an opinion concurring in part and dissenting in part.

**Opinion by:** John P. Devine

# Opinion

 **[\*891]** The people of the State of Texas, acting through their elected representatives, have long empowered Texas cities to regulate certain activities outside their corporate boundaries. _HN1_ Municipal authority to act extraterritorially reflects the legislature's policy determination that limited local regulation in statutorily defined buffer zones promotes the "general health, safety, and welfare" of the citizenry.[1] As legislatively authorized, the City of College Station extends local ordinances regulating "off-premise" signage and driveway construction to property in its extraterritorial jurisdiction (ETJ). Those ordinances are now under fire by ETJ property owners who contend that local regulation without a corresponding right to vote in local elections is incompatible with the Texas Constitution's "republican form of government" requirement. **[\*\*3]** [2] The property owners seek a declaration that the ordinances are facially void and unenforceable.

The only issue at this nascent stage of the dispute is whether the constitutional claim is justiciable. The City argues that it is not for several reasons, including that the form of local government is a political question for the legislature, not the courts. The lower courts agreed and dismissed the suit with prejudice. But while the case was pending on appeal, the legislature changed the law to provide ETJ residents a method **[\*892]** to unilaterally opt out of a city's ETJ.[3] The statutory procedure offers the property owners complete relief that would moot their constitutional claims, but they have yet to avail themselves of this self-help solution. In keeping with "the judiciary's commitment to the separation of powers, respect for the other branches, and desire to prevent constitutional friction unless and until unavoidable,"[4] we vacate the lower court judgments and remand to the trial court with instructions to abate the proceedings to allow the property owners a reasonable opportunity to complete the opt-out process.

---

[1] _Tex. Loc. Gov't Code §§ 42.001_, _.021_.

[2] _See_ _Tex. Const. art. I, § 2_ (consecrating the people's pledge "to the preservation of a republican form of government").

[3] _Act of May 8, 2023, 88th Leg., R.S., ch. 106, §§ 1, 5, 2023 Tex. Gen. Laws 213, 213-16_ (codified at _Tex. Loc. Gov't Code §§ 42.101-.156_).

[4] _Webster v. Comm'n for Law. Discipline, 704 S.W.3d 478, 488 (Tex. 2024)_.

I

HN2 Extraterritorial jurisdiction is a legislative creation that allows a municipality [**4] to exert specified regulatory authority over unincorporated areas contiguous to municipal boundaries.[5] Texas municipalities have been empowered to regulate in areas beyond city limits for more than 100 years.[6] The current statutory scheme dates back to the 1960s.[7] HN3 As codified in Chapter 42 of the Texas Local Government Code,[8] the geographic limit of a particular municipality's ETJ is determined by its population size, among other things.[9] Within this area, the legislature has authorized municipalities to exercise the state's police powers on specific matters, including plats and subdivision of land, signage, public roads, and groundwater extraction.[10] Other types of extraterritorial regulation is specifically forbidden. For example, a municipality may not regulate the use, height, or size of any building in its ETJ, require a building permit, or enforce its building code.[11]

With a population exceeding 100,000 residents, the City of College Station's ETJ extends five miles from the corporate boundary line and generally covers only those adjacent areas that are not part of any other municipality.[12] The plaintiffs, Shana Elliott and Lawrence Kalke, live [*893] and own real property in the City's ETJ. Although they have no [**5] vote in City elections, their property is subject to regulation under certain City ordinances. In this lawsuit, they challenge two[13]—one that prohibits "all off-premise and portable signs"[14] and another that requires property owners to secure a City permit to improve or construct a driveway.[15] The plaintiffs have yet to take any affirmative steps towards engaging in either activity, but they nonetheless view the ordinances as unlawful encumbrances on

---

[5] See Tex. Loc. Gov't Code § 42.021 (defining municipal ETJ and setting general boundaries).

[6] See Act approved April 7, 1913, 33d Leg., R.S., ch. 147, § 4, 1913 Tex. Gen. Laws 307, 314 ("That each city shall have the power to define all nuisances and prohibit the same within the city and outside the city limits for a distance of five thousand feet; to have power to police all parks or grounds, speedways, or boulevards owned by said city and lying outside of said city . . . .") (current version at Tex. Loc. Gov't Code § 217.042).

[7] See Municipal Annexation Act, 58th Leg., R.S., ch. 160, 1963 Tex. Gen. Laws 447.

[8] Tex. Loc. Gov't Code §§ 42.001-.904 (establishing the extraterritorial jurisdiction of municipalities).

[9] Id. §§ 42.021-.026.

[10] Id. §§ 212.002-.003, 216.003, .901-.902; see id. § 42.001 (articulating the legislative purpose underlying extraterritorial jurisdiction). The parties do not assert that the City's status as a home-rule municipality alters the relevant legal analysis. HN4 A home-rule municipality has the "full power of local self government," id. § 51.072, so long as the charter provisions or ordinances are not inconsistent with state or federal law, Tex. Const. art. XI, § 5.

[11] Tex. Loc. Gov't Code §§ 212.003(a), .049.

[12] Id. § 42.021(a)(5); COLLEGE STATION, TEX., CODE OF ORDINANCES ch. 34, art. II, § 34-29 & app. A, art. 11, § 11.2 (2025) (defining the City's "extraterritorial jurisdiction" consistent with the Local Government Code).

[13] The plaintiffs' lawsuit initially targeted a broader range of City ordinances, but the suit's focus has since narrowed.

[14] COLLEGE STATION, TEX., CODE OF ORDINANCES app. A, art. 7, § 7.5(D)(11), (BB) (prohibiting "off-premises signs, including commercial and non-commercial billboards" in the City's ETJ). "'Off-premise sign' means a sign displaying advertising copy that pertains to a business, person, organization, activity, event, place, service, or product not principally located or primarily manufactured or sold on the premises on which the sign is located." Tex. Loc. Gov't Code § 216.002(3).

[15] COLLEGE STATION, TEX., CODE OF ORDINANCES ch. 34, art. II, § 34-36(b)(3) ("Any property owner desiring a new driveway approach or an improvement to an existing driveway at an existing residential or other property shall make application for a driveway permit[.]"); see id. § 34-31(a) ("This article shall govern all . . . driveways within the corporate limits . . . and within the [ETJ] of the City as established by the Texas Local Government Code.").

the free use of their property. The City concedes that the ordinances are applicable to the plaintiffs' property and could be enforced in a suit for injunctive relief.[16] Although the City claims it has neither enforced nor threatened to enforce these ordinances against the plaintiffs or similarly situated residents, it has made no assurances of nonenforcement.

To eliminate any regulatory impediment, the plaintiffs seek a judicial declaration that the ordinances are invalid and unenforceable.[17] The plaintiffs assert that local regulation over nonvoting ETJ residents is facially unconstitutional under the "republican form of government" limitation in *Article I, Section 2 of the Texas Constitution.* Echoing **[**6]** language from the *United States Constitution's Guarantee Clause,*[18] *Section 2 of the Texas Bill of Rights* enshrines a bedrock principle of state governance:

> All political power is inherent in the people, and all free governments are founded on their authority, and instituted for their benefit. The faith of the people of Texas stands pledged to the preservation of a republican form of government, and, subject to this limitation only, they have at all times the inalienable right to alter, reform or abolish their government in such manner as they may think expedient.[19]

Whatever "republican form of government" means in its fullness,[20] the plaintiffs contend that, at a minimum, this clause **[\*894]** mandates that Texans shall have the power to vote for all those who regulate a locality in which they reside.

The City opposes the suit on both justiciability and merits grounds. Antecedent to a merits-based inquiry, the City filed a plea to the jurisdiction asserting that (1) the plaintiffs lack standing because they have suffered no injury, (2) the constitutional claims are not ripe because there is no imminent threat of enforcement, and (3) the structure and operation of local government is a nonjusticiable political question for the legislature. *HN6* The political question doctrine is "primarily **[**7]** a function of the separation of powers" and "excludes from judicial review controversies that revolve around policy choices and value determinations constitutionally committed for resolution" to nonjudicial government branches.[21]

Over the plaintiffs' opposition, the trial court granted the plea and dismissed the case with prejudice.[22] While an appeal was pending, the legislature amended the ETJ statute to provide ETJ residents a voluntary process to secure the

---

[16] *See Tex. Loc. Gov't Code § 212.003(c)*.

[17] *See Tex. Civ. Prac. & Rem. Code § 37.004(a)* (*HN5* authorizing a person "whose rights, status, or other legal relations" are affected by a municipal ordinance to seek a declaration regarding its construction or validity).

[18] *U.S. Const. art. IV, § 4* ("The United States shall guarantee to every State in this Union a Republican Form of Government . . . .").

[19] *Tex. Const. art. I, § 2*.

[20] *See Bonner v. Belsterling, 104 Tex. 432, 138 S.W. 571, 574 (Tex. 1911)* (quoting Thomas Jefferson on the meaning of the term "republic" as "of very vague application in every language" but, "purely and simply, it means a government by its citizens in mass, acting directly and not personally, according to rules established by the majority; and that every other government is more or less republican in proportion as it has in its composition more or less of this ingredient of the direct action of citizens. . . . [G]overnments are more or less republican as they have more or less of the element of popular election and control in their composition.").

[21] *Am. K-9 Detection Servs., LLC v. Freeman, 556 S.W.3d 246, 253 (Tex. 2018)* (quoting *Baker v. Carr, 369 U.S. 186, 210, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962)*, and *Japan Whaling Ass'n v. Am. Cetacean Soc'y, 478 U.S. 221, 230, 106 S. Ct. 2860, 92 L. Ed. 2d 166 (1986)*).

[22] The trial court did not state the basis for its ruling; however, barring the plaintiffs from ever bringing their constitutional claims is inconsistent with dismissal based on lack of standing or ripeness. *Harris County v. Sykes, 136 S.W.3d 635, 639 (Tex. 2004)* (*HN7* "In general, dismissal with prejudice is improper when the plaintiff is capable of remedying the jurisdictional defect.").

release of property from a municipality's ETJ.[23] Although this opt-out process became effective the day after the court of appeals issued its opinion, the court of appeals affirmed the dismissal order based on the political question doctrine without discussing the amended statute.[24] In supplemental briefing filed in this Court, the parties disagreed about whether the amended statute renders the case nonjusticiable by mooting the constitutional claims or rendering the claims unripe for adjudication.

Having considered the various arguments on the questions presented, including the Solicitor General's amicus brief,[25] we have determined that the litigation should not proceed as presently postured because of the extent to which the intervening **[\*\*8]** change in the law alters the legal landscape. The legislature has provided a means for property owners to unilaterally secure the release of property from a municipality's ETJ. As explained below, the amendments to the ETJ statute have resulted **[\*895]** in a legal regime that is far different from the one the plaintiffs' pleadings and arguments attack. Whether or not the mere enactment of the opt-out process has mooted their constitutional claims altogether, the law now provides a means of nonjudicial recourse that largely alleviates the plaintiffs' republican-form-of-government concerns, even under their understanding of the clause's meaning. Due respect for a coequal branch of government accordingly demands that the judiciary refrain from making any unnecessary constitutional rulings.

## II

*HN8* The legislature has declared "the policy of the state to designate certain areas as the extraterritorial jurisdiction of municipalities to promote and protect the general health, safety, and welfare of persons residing in and adjacent to the municipalities."[26] In addition to creating, defining, and setting the terms by which nonresidents may be subjected to municipal regulation, the legislature controls the circumstances **[\*\*9]** under which a municipality's statutorily prescribed ETJ can be reduced or otherwise altered.[27]

Since 1963, the legislature has generally prohibited the reduction of a municipality's ETJ without the governing body's written consent.[28] That changed in 2023 with the enactment of SB 2038,[29] which offered two additional methods for securing the release of an area from a city's ETJ: (1) through a petition filed by a resident or landowner[30] or (2) by an election on the question of whether to release an area from the ETJ.[31]

---

[23] *See Act of May 8, 2023, 88th Leg., R.S., ch. 106, §§ 1, 5, 2023 Tex. Gen. Laws 213, 213-16* (codified at *Tex. Loc. Gov't Code §§ 42.101-.156*) (effective Sept. 1, 2023).

[24] *674 S.W.3d 653, 657, 675 (Tex. App.—Texarkana 2023)*. The appeal was transferred from the Tenth Court of Appeals to the Sixth Court of Appeals by a docket-equalization order of this Court. *See Tex. Gov't Code § 73.001(a)*.

[25] Amicus briefs have also been submitted by Texas Municipal League, The Goldwater Institute, the Bexar County Emergency Services District Association, the Bexar County Emergency Services District No. 5, and Timberwood Park.

[26] *Tex. Loc. Gov't Code § 42.001*.

[27] *Id. §§ 42.023-.024* (setting conditions for release, reduction, and transfer of a municipality's ETJ).

[28] *Id. § 42.023* (stating the consent requirement and listing certain exceptions); Municipal Annexation Act, 58th Leg., R.S., ch. 160, § 3(c), 1963 Tex. Gen. Laws 447, 448-49.

[29] *See Act of May 8, 2023, 88th Leg., R.S., ch. 106, § 1, 2023 Tex. Gen. Laws 213, 213-16* (codified at *Tex. Loc. Gov't Code §§ 42.101-.156*).

[30] *Id. at 213-14* (codified at *Tex. Loc. Gov't Code §§ 42.101-.105*).

[31] *Id. at 214-16* (codified at *Tex. Loc. Gov't Code §§ 42.151-.156*).

**HN9** Release by petition allows the owner of even a single parcel of land to unilaterally and automatically secure the property's release from a city's ETJ.[32] Once the city secretary has verified the property owner's signature on an otherwise valid petition, the city is required to "immediately release the area from [its ETJ]."[33] Because releasing the area is the only action a city is authorized to take on a **[*896]** valid petition, its consent is not required.[34] The statute is clear on this:

> If a municipality *fails to take action to release the area* . . . by the later of the 45th day after the date the municipality receives the petition or the next meeting of the municipality's governing body **[**10]** that occurs after the 30th day after the date the municipality receives the petition, *the area is released by operation of law*.[35]

**HN10** Because the statute prescribes a mandatory action and a mandatory consequence for noncompliance, no discretion is afforded to the municipality on these matters.[36] When property is released from a municipality's ETJ—by the city or by operation of law—regulation of the area is necessarily returned to the county. The amended statute confers no regulatory authority and imposes no public duties on private persons residing in the released area.[37] Nor does it allow landowners to create a regulatory scheme of their choosing or permit them to pick and choose among the municipal ordinances to which they will adhere. Instead, it offers landowners a choice among existing regulatory schemes.

**HN14** Not all areas in an ETJ are eligible for release under the amended statute.[38] For example, the release process is not available for an area within five miles of a military base at which an active training program is conducted or for property that is subject to a strategic **[**11]** partnership agreement as defined in Chapter 43 of the Local Government Code.[39] The plaintiffs do not claim that their property falls within an exclusion, and the City concedes—as it must—that the statute's plain language grants the plaintiffs the unilateral ability to secure the release of their property from the City's ETJ. **HN15** Once released, the area "may not be included in the [ETJ] or the corporate boundaries of a municipality, unless the owner or owners of the area subsequently request that the area be included in the

---

[32] *Tex. Loc. Gov't Code §§ 42.102(b)* ("The owner or owners of the majority in value of an area consisting of *one or more parcels of land* in a municipality's [ETJ] may file a petition with the municipality in accordance with this subchapter for the area to be released from the [ETJ]." (emphasis added)), *.104(a)* (**HN11** requiring the petition to be signed by "more than 50 percent of the registered voters of the *area described by the petition* as of the date of the preceding uniform election date" or "a majority in value of the holders of title of land *in the area described by the petition*" (emphases added)); *see id. § 42.103* (making Chapter 277 of the Election Code applicable to a petition requesting removal); *see also Tex. Elec. Code §§ 277.001-.004* (governing the requisites for a petition prescribed by law outside of the Election Code).

[33] *Tex. Loc. Gov't Code § 42.105(a)-(c)*.

[34] *Cf. City of Murphy v. City of Parker, 932 S.W.2d 479, 481 n.1 (Tex. 1996)* (observing that the legislature created the ETJ scheme and has the power to alter it, including "the power to entirely eliminate the requirement that a city give its written consent to a reduction of its ETJ").

[35] *Tex. Loc. Gov't Code § 42.105(d)* (emphases added).

[36] *See Image API, LLC v. Young, 691 S.W.3d 831, 841 (Tex. 2024)* (**HN12** "A statute requiring that an act be performed within a certain time, using words like shall or must, is mandatory."); *Helena Chem. Co. v. Wilkins, 47 S.W.3d 486, 493 (Tex. 2001)* ("The word 'must' is given a mandatory meaning when followed by a noncompliance penalty." (internal quotation marks omitted)).

[37] *See FM Props. Operating Co. v. City of Austin, 22 S.W.3d 868, 880 (Tex. 2000)* (**HN13** "A delegation [of legislative authority] occurs only when an entity is given a public duty and the discretion to set public policy, promulgate rules to achieve that policy, or ascertain conditions upon which the existing laws will apply.").

[38] *Tex. Loc. Gov't Code §§ 42.101*, *.151* (exempting certain areas from ETJ removal by petition or election).

[39] *Id. §§ 42.101(1)*, *(5)*, *.151(1)*, *(5)*.

municipality's [ETJ] or corporate boundaries."[40] Accordingly, the petition-for-removal process would certainly and permanently moot the only claim the plaintiffs have brought in this lawsuit. The plaintiffs nonetheless continue to press their constitutional claims without attempting the nonjudicial resolution the statute **[*897]** provides. The stated reason: futility.[41]

The plaintiffs point to at least ten resolutions the City has formally adopted purporting to deny release petitions duly filed by ETJ property owners. In each, the City states its opinion that SB 2038 (1) unconstitutionally delegates the City's legislative authority and (2) conflicts with the consent requirement **[**12]** in *section 42.023 of the Local Government Code*.[42] The City has also banded together with more than a score of other municipalities in challenging SB 2038's validity under assorted constitutional and statutory-construction theories in parallel litigation.[43] The City's opposition to the new law is manifest, but that presents no barrier to the plaintiffs' pursuit of the statutory release process.

Nor does the City's resistance to SB 2038 authorize this Court to pass judgment on the constitutionality of an ETJ regime that lacks a unilateral opt-out option—a regime that no longer exists and to which the plaintiffs are no longer subject. *HN16* The Local Government Code imposes a mandatory duty on City officials to *immediately release* an area described in a release petition, and if that does not happen within a specified timeframe, release is effectuated *as a matter of law*. Any purported denial of a compliant petition is legally ineffective to avoid the statutory fail-safe. To the contrary, such an action triggers release *automatically* because, in the words of the statute, the municipality has "fail[ed] to take action to release the area."[44] No City ordinance or policy statement can override an express legislative command **[**13]** or supersede what has occurred by operation of law.[45] On the language of the statute, mootness is all but a certainty. But *HN17* even when mootness emanating from a nonjudicial process is merely a possibility, we have consistently required abatement of the judicial proceedings while the litigants pursue relief extrajudicially.[46] That is what should happen here.

---

[40] *Id.* § 42.105(e).

[41] In a similar vein, the plaintiffs contend that requiring a property owner to seek "permission" to leave the jurisdiction of an unlawful authority is a distinct injury that the removal process will not cure. This argument misunderstands the statutory scheme, which does not give the City discretion to deny a release petition. Release is a matter of paperwork, not permission.

[42] *See, e.g.*, City of College Station, Tex., Resolution Nos. 03-28-24-9.4a (Mar. 28, 2024); 03-28-24-9.4b (Mar. 28, 2024); 03-28-24-9.4c (Mar. 28, 2024); 03-28-24-9.5a (Mar. 28, 2024); 03-28-24-9.5b (Mar. 28, 2024); 03-28-24-9.5c (Mar. 28, 2024); 10-24-24-7.3 (Oct. 24, 2024); 10-24-24-7.4 (Oct. 24, 2024); 10-24-24-7.5 (Oct. 24, 2024); 12-12-24-7.17 (Dec. 12, 2024), *available at* https://www.cstx.gov/departments___city_hall/codes__ordinances_and_policies.

[43] *See City of Grand Prairie v. State*, No. D-1-GN-23-007785 (261st Dist. Ct., Travis County, Tex. Oct. 25, 2023).

[44] *Tex. Loc. Gov't Code § 42.105(d)*.

[45] *HN18 See Tex. Const. art. XI, § 5(a)* ("[N]o [home-rule city] charter or any ordinance passed under said charter shall contain any provision inconsistent with . . . the general laws enacted by the Legislature of this State."); *City of Laredo v. Laredo Merchs. Ass'n, 550 S.W.3d 586, 592 (Tex. 2018)* (observing that the legislature can expressly or impliedly limit or withdraw the local self-government power of a home-rule municipality, so long as the legislature's intent to impose the limitation appears with unmistakable clarity).

[46] *Cf., e.g., CPS Energy v. Elec. Reliability Council of Tex., 671 S.W.3d 605, 620 (Tex. 2023)* ("[A] decision from the PUC on the underlying issues could moot CPS's constitutional claims . . . [by] cur[ing] the alleged violations and obviat[ing] the need to assert the constitutional claims in court. And even if it does not, a party is not precluded from pursuing its constitutional claims after exhaustion . . . ."); *Garcia v. City of Willis, 593 S.W.3d 201, 211-12 (Tex. 2019)* (holding that even if the complainant "could not litigate his constitutional claims in an administrative proceeding, the fact remains that the hearing officer might have ruled in his favor for other reasons that would moot his constitutional arguments," so "he was at least required to seek administrative relief before filing a takings claim in district court"); *City of Dallas v. Stewart, 361 S.W.3d 562, 579 (Tex. 2012)* ("[A] litigant must avail

 **[*898]** *HN19* Texans have long permitted the legislature to determine, subject to constitutional limits, when an individual's private-property rights must yield to the public interest in health, safety, and welfare.[47] But in our republican form of government, the legislature retains the power to bring local government to heel and in all things remains accountable to the people for its judgment.[48] *HN20* In SB 2038, the legislature has reweighed the interests at stake,[49] and the role of the judiciary "is not to second-guess the policy choices that inform our statutes."[50] Under the doctrine of constitutional avoidance, our duty to ensure compliance with the Texas Constitution comes with a corresponding "duty to avoid unnecessary constitutional issues."[51] This doctrine "manifest[s] the judiciary's commitment to the separation of powers, respect for the other **[**14]** branches, and desire to prevent constitutional friction unless and until unavoidable."[52] By refraining from exercising jurisdiction when a dispute can be resolved extrajudicially under a legislative enactment, we uphold the separation of powers that stabilizes our government.[53]

There are two methods an ETJ property owner can pursue to get out from under the City's regulation: under the ETJ statute or under the Texas Constitution. Each one could resolve, and thereby moot, the **[*899]** other. *HN24* The doctrine of constitutional avoidance directs an order of operations, not as a jurisdictional matter but as a discretionary policy matter akin to comity. Because there is no pressing need for this Court to opine on sweeping questions of constitutional law that will necessarily evaporate, it would be imprudent to do so at this time.[54] Although the City is

---

itself of statutory remedies that may moot its takings claim, rather than directly institute a separate proceeding asserting such a claim.").

[47] *See Commons of Lake Hous., Ltd. v. City of Houston, ___ S.W.3d ___, 2025 Tex. LEXIS 203, 2025 WL 876710, at *6 (Tex. Mar. 21, 2025)* (*HN21* "The government must exercise its police power to satisfy its responsibilities, and this commonly requires the imposition of restrictions on the use of private property. . . . [S]ome of these intrusions are compensable; most are not." (citations and internal quotation marks omitted)); *Sheffield Dev. Co. v. City of Glenn Heights, 140 S.W.3d 660, 670 (Tex. 2004)* (while "all property is held subject to the valid exercise of the police power," some regulations may give rise to a compensable taking (citation and internal quotation marks omitted)).

[48] *See supra* note 45.

[49] *HN22 See* House Comm. on Land & Res. Mgmt., Bill Analysis, Tex. S.B. 2038, 88th Leg., R.S. (2023) (recognizing that ETJ statutes afford municipalities "too much control over areas outside of municipal corporate boundaries" and that allowing such regulation over residents and property owners who have "no vote or voice in the municipalities that regulate them" "may not necessarily be in their best interests").

[50] *McIntyre v. Ramirez, 109 S.W.3d 741, 748 (Tex. 2003)*.

[51] *See In re Turner, 627 S.W.3d 654, 656 (Tex. 2021)* (orig. proceeding) ("While we recognize our role as the ultimate interpreter of the Constitution[,] . . . courts have a duty to avoid unnecessary constitutional issues." (alterations in original) (quoting *Sullivan v. McDonald, 281 Conn. 122, 913 A.2d 403, 406 (Conn. 2007)*)).

[52] *Webster v. Comm'n for Law. Discipline, 704 S.W.3d 478, 488 (Tex. 2024)*.

[53] *See Borgelt v. Austin Firefighters Ass'n, 692 S.W.3d 288, 303 (Tex. 2024)* (recognizing *HN23* the constitutional avoidance doctrine's prudential foundation that is rooted in "the presumption that the rest of the government, no less than the judiciary, intends to comply with the Constitution"); *see also United States v. Winstar Corp., 518 U.S. 839, 875, 116 S. Ct. 2432, 135 L. Ed. 2d 964 (1996)* (the "function of constitutional avoidance" includes "avoiding difficult constitutional questions about the extent of state authority to limit the subsequent exercise of legislative power").

[54] That is not to say that a court must *always* abate and direct the plaintiff to initiate a unilateral opt-out procedure before addressing the constitutional challenge. It might be inappropriate for a court to require the plaintiff to undergo an opt-out procedure that would itself cause an independent injury. But that is not the case here.

challenging SB 2038's constitutionality in other litigation, the statute is presumed constitutional and remains the law.[55] What matters here and now is that the statute's plain language affords these plaintiffs prompt and complete relief for their alleged injuries.

The importance of judicial restraint also compels us to **[\*\*15]** vacate the court of appeals' opinion. With a complete legislative solution already enacted and imminently effective,[56] the court of appeals could have paused the litigation rather than unnecessarily opining on the justiciability question. Had the court been apprised of this significant legislative development—and there is no indication that it was—we suspect it would have followed our constitutional avoidance precedent and abated the suit or otherwise taken the altered legal landscape into account. _HN26_ Opinions in cases involving matters that have become moot may be vacated when we have concluded, as a matter of our equitable discretion, "that the public interest would be served by vacatur."[57] Though the procedural posture is different here, we exercise our discretion to provide the same equitable relief based on the state of the legal landscape when the court of appeals ruled.

_HN27_ "Vacatur removes the opinion's binding precedential nature but does not strike it from case reporters or foreclose litigants and courts in future cases from relying on it as persuasive authority."[58] Without commenting on the correctness _vel non_ of the court of appeals' analysis, some observations about the opinion are **[\*\*16]** therefore warranted. First, the opinion does not purport to hold that "republican form of government" claims under the Texas Constitution are _categorically_ nonjusticiable. Rather, based on the appellate court's understanding of our opinions in _Brown v. City of Galveston_[59] and _Bonner v. Belsterling_,[60] the court found itself constrained to the conclusion that questions concerning the legislature's choices about the form of municipal government are beyond **[\*900]** judicial purview.[61] Second, even as to that conclusion, the court hedged, observing that those cases may also be fairly construed as having found the issue to be within the judiciary's reach but then determining that the authority the legislature had exercised over the form of city government in those cases was consistent with a constitutional "republican form of government."[62] The court's uncertainty about the correct framing of the issue cautions against reading the vacated opinion too expansively.

III

---

[55] _See Walker v. Gutierrez, 111 S.W.3d 56, 66 (Tex. 2003)_ (noting that_HN25_ statutes are presumed to be constitutional and "the party challenging the constitutionality of a statute bears the burden of demonstrating that the enactment fails to meet constitutional requirements").

[56] The Governor signed S.B. 2038 into law on May 19, 2023, nearly a month before the court of appeals heard oral argument and more than three months before the court issued its opinion on the eve of the law's effective date. _See 674 S.W.3d 653, 653 (Tex. App.—Texarkana 2023)_.

[57] _Morath v. Lewis, 601 S.W.3d 785, 790-92 (Tex. 2020)_ (quoting _U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship, 513 U.S. 18, 26, 115 S. Ct. 386, 130 L. Ed. 2d 233 (1994)_).

[58] _Id. at 791_.

[59] _97 Tex. 1, 75 S.W. 488 (Tex. 1903)_.

[60] _104 Tex. 432, 138 S.W. 571 (Tex. 1911)_.

[61] _674 S.W.3d at 657_.

[62] _Id._; _see Abbott v. Mexican Am. Legis. Caucus, 647 S.W.3d 681, 698 (Tex. 2022)_ (noting that the Declaratory Judgments Act does not waive immunity from suit for facially invalid constitutional claims).

For the reasons stated, we vacate the lower court judgments and the court of appeals' opinion. The case is remanded to the trial court with instructions to abate the proceedings pending the plaintiffs' exercise of their statutory remedy. **[\*\*17]** If after a reasonable time the plaintiffs have not submitted a compliant petition for release and have therefore elected to forgo the unilateral release process, the suit may be subject to dismissal because any injury would be traceable only to their choice to voluntarily submit to the City's ETJ regulation.[63]

John P. Devine

Justice

**OPINION DELIVERED:** May 9, 2025

**Concur by:** SULLIVAN

# Concur

JUSTICE SULLIVAN, concurring in part and dissenting in part.

In my view, the courts below erred in holding that the plaintiffs' republican-form-of-government claim is nonjusticiable under the political-question doctrine. To be frank, I struggle to improve upon the thorough, prompt, and devastating analysis that we invited a friend of the Court to file. *See* OSG Amicus Br. 9-25 (analyzing *Tex. Const. art. I, §§ 2*, *29*; *art. II, § 1*); *cf. The Simpsons: Homie the Clown* (Fox television broadcast Feb. 12, 1995) ("Stop, stop, he's already dead!"). For now, though, we needn't reach for a ream of paper and the political-question decoder rings.[1]

That's because our Court has now "vacate[d] the lower court judgments and the court of appeals' opinion." *Ante* at 18. The opinion of **[\*\*18]** the court of appeals has thus been stripped of "any binding precedential effect." *Morath v. Lewis, 601 S.W.3d 785, 791 (Tex. 2020)* (per curiam). I agree with the majority (natch) that nobody in Texas should be bound by the opinion reported at *674 S.W.3d 653*. Because it'll remain reported there, bench and bar alike can still "rely[ ] on it as persuasive authority." *Morath, 601 S.W.3d at 791*. But anyone who's tempted to try will find precious little power to persuade in the opinion below—especially when stacked up against **[\*901]** the CVSG brief that's been filed in this Court.[2]

So why am I respectfully dissenting in part here? Unlike the majority, I wouldn't compel the plaintiffs—on pain of dismissal of their whole case—to petition the City of College Station for release from its extraterritorial jurisdiction. *See Ante* at 18 ("If after a reasonable time the plaintiffs have not submitted a compliant petition for release and have

---

[63] *See Meyers v. JDC/Firethorne, Ltd., 548 S.W.3d 477, 485 (Tex. 2018)* (holding that **HN28** a claim is justiciable only if the plaintiff (1) suffers an injury in fact, (2) that is fairly traceable to the defendant's conduct, and (3) redressable by a ruling from the judiciary).

[1] *See, e.g., Van Dorn Preston v. M1 Support Servs., L.P., 642 S.W.3d 452, 455, 457-65 (Tex. 2022)*; *In re Abbott, 628 S.W.3d 288, 294 n.8 (Tex. 2021)*; *Am. K-9 Detection Servs., LLC v. Freeman, 556 S.W.3d 246, 249-50, 252-60 (Tex. 2018)*; *Morath v. Tex. Taxpayer & Student Fairness Coal., 490 S.W.3d 826, 846-47 (Tex. 2016)*; WILLIAM BAUDE ET AL., HART AND WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 291-324 (8th ed. 2025); PAUL M. BATOR ET AL., HART AND WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 233-41 (2d ed. 1973).

[2] For the avoidance of link rot, a copy of the CVSG brief has been archived at https://perma.cc/FG5V-NBQ4. *Cf. Texas v. Am. Tobacco Co., 441 F. Supp. 3d 397, 424 n.21 (E.D. Tex. 2020)* ("To avoid the issues of link rot and reference rot, the Court uses a persistent identifier link to archive [some website], as available at the time this Order is issued."). The brief, filed in No. 23-0767 on March 20, 2025, is also available on our website as of this writing. The acronym *CVSG*, by the way, stands for the phrase "call for the views of the solicitor general." *E.g., Conkright v. Frommert, 556 U.S. 1401, 1402-03, 129 S. Ct. 1861, 173 L. Ed. 2d 865 (2009)* (Ginsburg, J., in chambers); *Scott A. Keller, Before the Bench: Unique Aspects of Texas Supreme Court Practice, 82 Tex. Bar. J. 502, 503 & nn.29-32 (July 2019)*.

Elliott v. City of Coll. Station

therefore elected to forgo the unilateral release process, the suit may be subject to dismissal . . . ."); *cf.* TEX. R. APP. P. 60.2(f), 60.6.

Sure, the plaintiffs could play a get-out-of-extraterritorial-jurisdiction-free card, pursuant to a bill the Governor signed into law almost two years ago. *See* S.B. 2038, 88th Leg., R.S. (2023), *codified in relevant part at* Tex. Loc. Gov't Code §§ 42.101-.105. And maybe that was the better **[\*\*19]** play for them all along? Senate Bill 2038's relatively new opt-out regime could undercut the plaintiffs' entitlement to declaratory and injunctive relief, were a court to reach the merits of their republican-form-of-government claim. *See Ante* at 8; OSG Amicus Br. 35.

On the other hand, the City has denied every request for release from its extraterritorial jurisdiction so far, based on a dubious constitutional challenge to Senate Bill 2038 that it and other municipalities are pressing in a separate case. *See Ante* at 12. Maybe the City will win that case, or lose it slowly? Nobody knows right now—least of all these plaintiffs. If they want to keep litigating their republican-form-of-government claim in the meantime, I'd let them take their best shot on remand. *Cf.* The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25, 33 S. Ct. 410, 57 L. Ed. 716, 1913 Dec. Comm'r Pat. 530 (1913) (Holmes, J.) ("Of course, the party who brings a suit is master to decide what law he will rely upon . . . .").

Now that this Court has spoken, though, the plaintiffs are bound to get the message: "Release is a matter of paperwork, not permission." *Ante* at 12 n.41; *cf.* Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 184, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016) (Roberts, C.J., dissenting) (querying whether "there are other plaintiffs out there who . . . won't take 'yes' for an answer"). Here's hoping the City can read **[\*\*20]** the handwriting on the wall, too.

James P. Sullivan

Justice

**OPINION FILED:** May 9, 2025

Page 18 of 18

# Appendix 2

AN ACT

relating to the release of certain areas from a municipality's extraterritorial jurisdiction by petition or election.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1.  Section 42.023, Local Government Code, is amended to read as follows:

Sec. 42.023.  REDUCTION OF EXTRATERRITORIAL JURISDICTION. The extraterritorial jurisdiction of a municipality may not be reduced unless the governing body of the municipality gives its written consent by ordinance or resolution, except:

(1)  in cases of judicial apportionment of overlapping extraterritorial jurisdictions under Section 42.901;

(2)  in accordance with an agreement under Section 42.022(d); [or]

(3)  as necessary to comply with Section 42.0235; or

(4)  as necessary to comply with Subchapter D or E.

SECTION 2.  Section 42.101, Local Government Code, is amended to read as follows:

Sec. 42.101.  APPLICABILITY.  This subchapter does not apply to an area located:

(1)  within five miles of the boundary of a military base, as defined by Section 43.0117, at which an active training program is conducted;

(2)  in an area that was voluntarily annexed into the

extraterritorial jurisdiction that is located in a county:

(A)　in which the population grew by more than 50 percent from the previous federal decennial census in the federal decennial census conducted in 2020; and

(B)　that has a population greater than 240,000;

(3)　within the portion of the extraterritorial jurisdiction of a municipality with a population of more than 1.4 million that is:

(A)　within 15 miles of the boundary of a military base, as defined by Section 43.0117, at which an active training program is conducted; and

(B)　in a county with a population of more than two million;

(4)　in an area designated as an industrial district under Section 42.044; [or]

(5)　in an area subject to a strategic partnership agreement entered into under Section 43.0751; or

(6)　for the extraterritorial jurisdiction of a municipality located in four or more counties, one of which has a population of 2.1 million or more and is adjacent to a county with a population of 2.6 million or more:

(A)　in an area subject to an active development agreement entered into under Section 212.172 with the municipality;

(B)　in a platted or unplatted lot of less than 12 acres unless included with the other land in a petition for release under Section 42.102; or

(C)　within a platted subdivision of 25 or more

lots if the area is a single lot.

SECTION 3. Section 42.151, Local Government Code, is amended to read as follows:

Sec. 42.151. APPLICABILITY. This subchapter does not apply to an area located:

(1) within five miles of the boundary of a military base, as defined by Section 43.0117, at which an active training program is conducted;

(2) in an area that was voluntarily annexed into the extraterritorial jurisdiction that is located in a county:

(A) in which the population grew by more than 50 percent from the previous federal decennial census in the federal decennial census conducted in 2020; and

(B) that has a population greater than 240,000;

(3) within the portion of the extraterritorial jurisdiction of a municipality with a population of more than 1.4 million that is:

(A) within 15 miles of the boundary of a military base, as defined by Section 43.0117, at which an active training program is conducted; and

(B) in a county with a population of more than two million;

(4) in an area designated as an industrial district under Section 42.044; [or]

(5) in an area subject to a strategic partnership agreement entered into under Section 43.0751; or

(6) for the extraterritorial jurisdiction of a

municipality located in four or more counties, one of which has a population of 2.1 million or more and is adjacent to a county with a population of 2.6 million or more:

(A)  in an area subject to an active development agreement entered into under Section 212.172 with the municipality;

(B)  in a platted or unplatted lot of less than 12 acres unless included with the other land in a petition for release under Section 42.152; or

(C)  within a platted subdivision of 25 or more lots if the area is a single lot.

SECTION 4.  Section 42.152, Local Government Code, is amended by amending Subsection (a) and adding Subsection (d) to read as follows:

(a) A resident of an area in a municipality's extraterritorial jurisdiction may request the municipality to hold an election in accordance with this subchapter to vote on the question of whether to release the area from the municipality's extraterritorial jurisdiction by filing with the municipality a petition that includes the signatures of at least five percent of the registered voters residing in the area as of the date of the preceding uniform election date.  A resident may only file for release of an area if the resident resides in the area subject to the release.

(d) If a municipality receives a petition under this section, the municipality shall provide notice of the petition to the residents and landowners of the area described by the petition. The municipality shall provide the notice not later than the

4

seventh business day after the date the municipality receives the petition.

SECTION 5.  Subchapter E, Chapter 42, Local Government Code, is amended by adding Section 42.157 to read as follows:

Sec. 42.157.  OPT OUT OF REMOVAL.  Before an area is released from a municipality's extraterritorial jurisdiction under this subchapter, a landowner in the area to be released must be provided the opportunity to have the landowner's property remain within the municipality's extraterritorial jurisdiction.

SECTION 6.  The changes in law made by this Act apply only to the eligibility of an area to be released from a municipality's extraterritorial jurisdiction as the result of a petition filed under Subchapter D, Chapter 42, Local Government Code, or an election requested under Subchapter E of that chapter, as applicable, on or after the effective date of this Act.

SECTION 7.  This Act takes effect September 1, 2025.

_____          _____
President of the Senate                  Speaker of the House

    I certify that H.B. No. 2512 was passed by the House on May 16, 2025, by the following vote:  Yeas 112, Nays 21, 2 present, not voting; and that the House concurred in Senate amendments to H.B. No. 2512 on May 29, 2025, by the following vote:  Yeas 119, Nays 20, 1 present, not voting.

 

_____
Chief Clerk of the House

    I certify that H.B. No. 2512 was passed by the Senate, with amendments, on May 27, 2025, by the following vote:  Yeas 27, Nays 4.

 

_____
Secretary of the Senate

APPROVED: _____
              Date

_____
     Governor

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Tristan Garza on behalf of Lynn Saarinen
Bar No. 17498900
tristan.garza@oag.texas.gov
Envelope ID: 108090883
Filing Code Description: Brief Requesting Oral Argument
Filing Description: BRIEF OF APPELLEES
Status as of 11/17/2025 7:24 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Allison Collins | 24127467 | Acollins@fosterswift.com | 11/14/2025 7:27:48 PM | SENT |
| Sherry Brown | | sherry@txmunicipallaw.com | 11/14/2025 7:27:48 PM | SENT |
| Andy Messer | | andy@txmunicipallaw.com | 11/14/2025 7:27:48 PM | SENT |
| Brad Bullock | | brad@txmunicipallaw.com | 11/14/2025 7:27:48 PM | SENT |
| Timothy Dunn | | Taddunn@txmunicipallaw.com | 11/14/2025 7:27:48 PM | SENT |
| Todd Disher | | todd@lehotskykeller.com | 11/14/2025 7:27:48 PM | SENT |
| William Thompson | | will@lkcfirm.com | 11/14/2025 7:27:48 PM | SENT |
| Cole Wilson | | cole.wilson@oag.texas.gov | 11/14/2025 7:27:48 PM | SENT |
| Guillermo Trevino | | will.trevino@brownsvilletx.gov | 11/14/2025 7:27:48 PM | SENT |
| Lena Chaisson-Munoz | | lena.munoz@brownsvilletx.gov | 11/14/2025 7:27:48 PM | SENT |
| George Hyde | | ghyde@txlocalgovlaw.com | 11/14/2025 7:27:48 PM | SENT |
| Matthew Weston | | mweston@txlocalgovlaw.com | 11/14/2025 7:27:48 PM | SENT |
| David Overcash | | david.overcash@wtmlaw.net | 11/14/2025 7:27:48 PM | SENT |
| Clark McCoy | | cmccoy@wtmlaw.net | 11/14/2025 7:27:48 PM | SENT |

Associated Case Party: City of Brownsville, Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Lena Chaisson-Munoz | | lena.munoz@brownsvilletx.gov | 11/14/2025 7:27:48 PM | SENT |
| Will S.Trevino | | will.trevino@brownsvilletx.gov | 11/14/2025 7:27:48 PM | SENT |

Associated Case Party: Attorney General Kenneth Paxton (in his Official Capacity

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Tristan Garza on behalf of Lynn Saarinen
Bar No. 17498900
tristan.garza@oag.texas.gov
Envelope ID: 108090883
Filing Code Description: Brief Requesting Oral Argument
Filing Description: BRIEF OF APPELLEES
Status as of 11/17/2025 7:24 AM CST

Associated Case Party: Attorney General Kenneth Paxton (in his Official Capacity

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Cole Wilson | | Cole.Wilson@oag.texas.gov | 11/14/2025 7:27:48 PM | SENT |
| Tristan AGarza | | tristan.garza@oag.texas.gov | 11/14/2025 7:27:48 PM | SENT |
| Lynn Saarinen | | lynn.saarinen@oag.texas.gov | 11/14/2025 7:27:48 PM | SENT |